The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Alan WALTERS, Defendant–Appellant.

No. 02CA2419.

Colorado Court of Appeals, Div. IV.

July 13, 2006.

Certiorari Denied Dec. 18, 2006.*

* Justice EID does not participate.

, Justice COATS would grant as to the following issue:

Whether comments made by the prosecutor during closing argument warranted reversal of the conviction under a plain error standard of review.

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Alan Walters, appeals the judgment of conviction entered upon jury verdicts finding him guilty of sexual assault on a child and contributing to the delinquency of minor. He also appeals the sentence imposed. We affirm in part, reverse in part, and remand for a new trial on the sexual assault charge.

## I. Background

The victim, a fourteen year old girl, and her girlfriend, WH, were visiting defendant's son, AJ, and AJ's friend at defendant's home. The victim alleged that, while she and defendant were alone in the bedroom, defendant

kissed her hand, touched her vaginal area, and put her hand on the crotch of his trousers where she could feel his erect penis. That night, the victim told WH about the event, and the next day, after talking with her father, the victim went to the police. The police told the victim to call defendant to try to get him to admit he sexually assaulted her. During the recorded telephone conversation, defendant apologized to the victim, but did not admit to touching her inappropriately.

Following defendant's arrest for the sexual assault, the police found marijuana and drug paraphernalia in his home. Defendant was charged with sexually assaulting the victim and contributing to the delinquency of defendant's minor son. After a trial, the jury found defendant guilty on both counts.

On the sexual assault count, the trial court sentenced defendant to an indeterminate probationary term of ten years to life. The court imposed a concurrent six year probationary term on the contributing to delinquency count. The court also ordered defendant to serve ninety days in jail on the sexual assault charge and a consecutive sixty days in jail on the contributing to delinquency charge. In addition, the court imposed a two year work release sentence and offense specific therapy.

Based on a complaint filed by defendant's probation officer, the court revoked defendant's probation. On the sexual assault count, the court resentenced defendant to an indeterminate sentence of four years to life in the Department of Corrections and a concurrent term of four years in prison plus three years of mandatory parole on the contributing to delinquency count. Defendant appeals his convictions and sentence.

## II. Prosecutorial Misconduct

Defendant contends that prosecutorial misconduct during closing argument violated his right to due process and to a fair and impartial jury. We agree, but only with respect to the sexual assault on a child charge.

### A. Law

A defendant has a constitutional right to trial by a fair and impartial jury. U.S. Const. amend. VI; Colo. Const. art. II, §§ 16, 23; see also Harris v. People, 888 P.2d 259 (Colo.1995). This constitutional right requires that an impartial jury determine guilt or innocence based solely on properly admitted evidence at trial. Domingo–Gomez v. People, 125 P.3d 1043 (Colo.2005). When a jury has been misled by inadmissible evidence or argument, it is no longer impartial. Harris v. People, supra; Oaks v. People, 150 Colo. 64, 68, 371 P.2d 443, 446–47 (1962).

During closing argument, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence. Domingo–Gomez v. People, supra.

However, to safeguard a defendant's right to a fair trial, a prosecutor must stay within the limits of appropriate prosecutorial advocacy during closing argument. Domingo–Gomez v. People, supra; Harris v. People, supra. For example, it is not proper for a prosecutor to refer to facts not in evidence or to make statements reflecting his or her personal opinion or personal knowledge. Nor may a prosecutor inflame and appeal to the jury's passions or prejudices. Domingo–Gomez v. People, supra; Harris v. People, supra; see also Wilson v. People, 743 P.2d 415 (Colo.1987) (stating that expressing personal opinion in closing argument is particularly inappropriate in criminal trials); People v. Sepeda, 196 Colo. 13, 581 P.2d 723 (1978); People v. Salazar, 648 P.2d 157 (Colo. App.1981) (disapproving of a prosecutor's appeal to the jury's emotions). Prosecutorial misconduct that misleads a jury to decide innocence or guilt on the basis of bias or prejudice may warrant reversal of a conviction. Harris v. People, supra.

We may consider a lack of contemporaneous objection by the defendant as demonstrating "the defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." Domingo–Gomez v. People, supra, 125 P.3d

at 1054 (quoting *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990)). When a defendant does not make a contemporaneous objection during closing argument, we review only for plain error. *Harris v. People, supra; Wilson v. People, supra.*

■ Prosecutorial misconduct during closing arguments rarely constitutes plain error that requires reversal. *People v. Constant,* 645 P.2d 843 (Colo.1982). To warrant reversal, the misconduct must be obvious and substantial and "so undermine[ ] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller,* 113 P.3d 743, 750 (Colo.2005) (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003)); *see People v. Constant, supra; People v. Petschow,* 119 P.3d 495 (Colo.App.2004). Prosecutorial misconduct amounts to plain error when it is flagrant or glaringly or egregiously improper. *Domingo–Gomez v. People, supra.*

■ When determining whether the prosecutor's statements were proper and whether reversal is warranted, we consider, among other things, the language used, the context of the statements, whether a statement improperly expressed the prosecutor's personal opinion, whether the statement is an acceptable comment on the credibility of witnesses, the strength of the evidence, whether the evidence is conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors. *Domingo–Gomez v. People, supra; Harris v. People, supra; Wilson v. People, supra; People v. Adams,* 708 P.2d 813 (Colo.App. 1985).

■ Although prosecutorial misconduct rarely requires reversal, an appellate court will reverse when a prosecutor engages in repeated misconduct that deprives a defendant of a fair trial. *People v. Adams, supra* (concluding that repeated instances of prosecutorial misconduct deprived the defendant of a fair trial). Reversal may also be warranted when a prosecutor repeatedly expresses personal opinions about the credibility of witnesses or evidence, or when the

evidence against a defendant is conflicting and inconclusive and the prosecutor continually appeals to the jurors' sentiments. *See Domingo–Gomez v. People, supra; Harris v. People, supra.*

Here, defendant did not object, and, therefore, we review the prosecutor's arguments for plain error.

### B. Defendant's Demeanor

■ In closing, after arguing that the victim was frightened by defendant, the prosecutor said:

> You saw the demeanor, the way this man acts. Defiant, aggressive. He stood up hard against [cross-examination]: He refused to answer questions. Imagine that man with a 14–year–old girl. Terrified.
>
> . . . .
>
> Remember [the victim's] words as she cried? ... She was trying. She wants to be as honest with you as she can. She told you everything she remembered. She tried to answer all of the questions she could.
>
> . . . .
>
> [The victim] was emotionally drained by cross-examination. We had to take a break.
>
> What did the defendant do? Did anybody see the defendant when she was leaving the courtroom crying? Did any of you? And ask your fellow jurors if [they] saw him laugh and smile when she left. Because I saw it. What did—talk to your fellow jurors, because I saw it.

In *People v. Constant, supra,* the supreme court concluded that the prosecutor's closing argument references to the defendant's demeanor at counsel table were not plain error. The court explained that a prosecutor may argue reasonable inferences to be drawn from a witness's demeanor when testifying, and that, although witness demeanor is not evidence, juries are instructed to consider it when evaluating a witness's credibility. The court was persuaded, in part, by the fact that the defendant testified in his own defense and, thereby, made his demeanor and credibility proper subjects for the jury to consider. The court also noted that the prosecutor

argued that the defendant's demeanor was evidence of his credibility and not that his demeanor was itself evidence of guilt.

Here, as in *Constant*, defendant testified and put his credibility in issue. The quoted portion of the prosecutor's argument focused on the victim's and defendant's credibility, and because the victim's and defendant's testimony about the events conflicted, it was permissible for the prosecutor to contrast the credibility of the two and to comment on defendant's demeanor in relation to his credibility.

However, it was not proper for the prosecutor to say, "Because I [defendant laugh and smile]. What did—talk to your fellow jurors, because I saw it." The prosecutor's attestation regarding what he saw impermissibly injected the prosecutor's credibility into the jury's consideration of defendant's demeanor.

### C. Effects of Multiple Sclerosis

■ Defendant's neurologist testified that she treated defendant for multiple sclerosis (MS) and that, after he began taking a prescribed antidepressant, he complained of erectile dysfunction. She then prescribed Viagra to address the dysfunction. She also testified that she does not normally conduct genital examinations of MS patients who report sexual dysfunction because it is common with MS.

Defendant testified that he had experienced erectile dysfunction as a result of MS and loss of sexual desire as a result of taking the antidepressant. The prosecution did not offer expert testimony regarding erectile dysfunction or loss of sexual desire as the result of MS or taking antidepressants.

Nonetheless, the prosecutor commented on the physical effects of defendant's MS as follows:

The defendant has a neurological disease, multiple sclerosis, which prevents any desire for sex. We talked about this in jury instructions. People know people with multiple sclerosis. It is a terrible disease. Very terrible disease. This defendant has MS. My boss has MS. You people know people with MS. MS doesn't cause this

type of actions. If that were the case, our society would be very, very scary. No, it doesn't prevent any sexual desire, because he had sexual desire. He showed it in his words, and he showed it in actions.

Although it is proper for jurors to consider the evidence in light of their observations and experiences in life, we conclude that it was improper for the prosecutor to argue that the jury should consider anecdotal information regarding the reported sexual experiences of acquaintances who suffered from the disease when considering whether MS affected defendant's sexual desire or function. Such information was outside the record and beyond the jurors' personal observations and experiences in life, and could not properly be considered. It was also improper for the prosecutor to refer to his boss, to assert that his boss has MS, and to imply that his boss's experience is somehow relevant to the effect of MS on sexual desire or function. Not only were those matters outside the record and irrelevant, but the prosecutor's comment also injected his own knowledge and credibility into the issue. This misconduct is particularly problematic here, where defendant presented his doctor's testimony on the issue and the prosecution did not.

### D. Lurking Around Elementary Schools

■ Defendant testified that, although he disapproved of his son's smoking marijuana, he wanted him to do so at home rather than on the street, so that he could supervise and see what the son was doing. Defendant also testified: "Today's day [sic] and all these kids are like that. It's out there, either in grade schools, the elementary schools. That's what they're doing. And ... I've seen that firsthand."

Referring to this testimony, the prosecutor argued:

[Defendant] told you ladies and gentlemen, I've seen [marijuana] in elementary schools. It's there. I work in juvenile, hey, it's there. I have children, you have children, never have I seen it at the elementary schools. Kids are pretty good about hiding. Why is this defendant lurking around at elementary schools? What

is he doing there? He doesn't have any kids in elementary school.

Nothing in defendant's testimony or other evidence supported the prosecutor's statement that defendant was "lurking around at elementary schools." Moreover, the word "lurking" implied that defendant learned about the use of marijuana by children while lingering near schools for a sinister purpose, as would a sexual predator or drug dealer. Not only was this argument without basis in the record, but it was also a flagrant attempt to inflame the jurors' passions and to appeal to their prejudices. Thus, it was egregiously improper.

### E. Parental Irresponsibility

■ Finally, in opening statement and rebuttal argument, the prosecutor commented on defendant's parental responsibility:

> He violated parental limits, his moral limits[. You] would have a father not allow a son to violate the law, not encourage it. . . . [H]e violated the appropriate limits of adults and children and sexual conduct.

> Many of you, I think almost all of you, are parents. And those of us who are parents know that with parenthood comes responsibility. Probably the most awesome and imposing and continuing responsibility that we have in our lives.

> That responsibility is many fold. One is to model our behavior so it influences our children. We all know that. That is one of our obligations as parents. And that was his obligation also. Another is to guide our children with respect to how they act and whether they follow the rules in the law. Not to help them conceal the behavior from the law, but to guide them to follow the law. It is so clear that this man failed absolutely in his parental responsibility. So the question here really is whether we should ignore that.

We conclude that the foregoing statements were fair comment on the evidence and not improper.

### F. Conclusions Regarding Misconduct

■ We conclude that the prosecutor's references to his personal knowledge of matters improperly injected his own credibility into the case. We also conclude that the prosecutor's assertion that defendant lurked around elementary schools was not only devoid of evidentiary support, but also impermissibly implied that defendant possessed a trait of character that reflected a propensity to prey on children, and improperly appealed to the jurors' emotions and prejudices. Therefore, we conclude that the prosecutor's arguments were flagrant and egregiously improper, and that they were so substantial and obvious as to warrant sua sponte intervention by the trial court to ensure a fair trial.

We also conclude that this was reversible plain error as to the sexual assault charge, but not as to the charge of contributing to the delinquency of a minor.

#### 1. Sexual Assault

With regard to the sexual assault charge, there were no witnesses to the alleged conduct when defendant was alone with the victim in the bedroom and there was no physical evidence. The only direct evidence was the conflicting testimony of the victim and defendant, and the circumstantial evidence was not significant.

Because the determination of defendant's guilt or innocence hinged on defendant's credibility and that of the victim, and because the evidence of defendant's guilt was not overwhelming, we conclude that the prosecutor's egregious and repeated misconduct so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the verdict. Therefore, we reverse the sexual assault on a child conviction and remand for a new trial on that charge.

#### 2. Contributing to the Delinquency of a Minor

■ However, the evidence of defendant's guilt of contributing to the delinquency of his minor son was overwhelming.

Defendant testified that he had marijuana and smoking devices in his home, smoked marijuana in front of his son, permitted his

son frequently to smoke marijuana at home, and smoked marijuana with his son on the night in question. Defendant's son also testified that defendant allowed him to smoke marijuana at their home and that defendant occasionally smoked marijuana in his presence. Because this testimony is overwhelming evidence of defendant's guilt, we conclude that the court's failure to intervene sua sponte when the prosecutor presented improper argument did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction of contributing to the delinquency of a minor.

### III. Search Warrant and Laboratory Report

■ Defendant asserts the trial court erred when it admitted evidence that the police obtained a search warrant for his home based on probable cause. Defendant also contends the trial court erred when it admitted a laboratory report that disclosed the presence of marijuana. We reject both contentions.

### A. Search Warrant

Because defendant did not object at trial to the admission of the detective's testimony outlining the procedure for obtaining a search warrant, we review this alleged error under the plain error standard. *See People v. Miller, supra.*

Although evidence regarding a search warrant is generally inadmissible as irrelevant when probable cause is not an issue, plain error review requires a consideration of "the strength of the evidence against the defendant, the posture of the defense, and any persistent, improper remarks by the prosecutor." *People v. Mullins,* 104 P.3d 299, 301 (Colo.App.2004) (citing *People v. Rodgers,* 756 P.2d 980 (Colo.1988)).

Even assuming the detective's testimony about search warrant procedure was irrelevant; we conclude its lack of relevance did not require sua sponte intervention by the trial court. Here, defendant testified about his use of marijuana and stated that he used marijuana in his home with his son. Defendant also testified that he smoked marijuana

with his son on the night the sexual assault allegedly occurred. Given the overwhelming evidence of defendant's guilt, there is no indication that the detective's testimony so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of defendant's conviction of contributing to the delinquency of a minor. Accordingly, we conclude there was no plain error.

### B. Testimony Regarding Laboratory Report

In *People v. Hinojos–Mendoza,* 140 P.3d 30, 2005 WL 2561391 (Colo.App. No. 03CA0645, July 28, 2005), a division of this court concluded that a criminal investigations laboratory report regarding the results of tests of suspected drugs was not testimonial and, therefore, could be admitted without cross-examination of the laboratory technician. *See Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We agree with the division's analysis and adopt it here.

In any event, the People did not introduce the laboratory report into evidence. Instead, a detective testified that the report stated that the substance was 0.63 grams of marijuana. Defendant did not object. In addition, the testimony of defendant and his son was sufficient evidence for the jury to convict defendant of contributing to the delinquency of a minor.

We conclude that any error in admitting hearsay testimony regarding the contents of the laboratory report was not obvious or substantial, given defendant's apparent lack of concern about the validity of the report itself. Even assuming any error was obvious and substantial, given defendant's testimonial admission that he had marijuana in his home and allowed his minor son to smoke it, we conclude that the admission of the testimony did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the verdict.

We decline to address defendant's contention that § 16–3–309(5), C.R.S.2005, is unconstitutional because he did not raise the issue in the trial court. *See People v. Boyd,* 30 P.3d 819 (Colo.App.2001).

Because we reverse the conviction for sexual assault on a child, we need not address defendant's contention that his sentence violated due process, equal protection of the law, and the prohibition against cruel and unusual punishment.

The judgment and sentence are affirmed as to the conviction of contributing to the delinquency of a minor and reversed as to the conviction of sexual assault on a child. The case is remanded for new trial on the sexual assault charge.

CASEBOLT and ROMÁN, JJ., concur.