The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Aaron M. **KENDALL**, Defendant– Appellant.

No. 04CA1212.

Colorado Court of Appeals, Div. V.

Jan. 11, 2007.

Rehearing Denied May 3, 2007.

ers. *People v. Bottenfield,* 159 P.3d 643, 645 (Colo.App.2006).

 

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Aaron M. Kendall, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree kidnapping and vehicular eluding. We affirm.

## I. Background

In the early morning hours of August 14, 2003, defendant and another man arrived at an apartment rented by J.W. Defendant kicked the wall outside the door and was eventually allowed into the apartment by J.W. The man accompanying defendant had a gun in the back waistband of his pants. Defendant walked around the apartment looking for his girlfriend, "Peaches," who was an acquaintance of J.W. Not finding her, defendant and the other man left.

J.W. called the police. Upon their arrival, the police obtained descriptions of the two men, as well as a description of the car they were driving. Sergeant Moore spotted the car and two men matching the suspects' descriptions at a restaurant near the apartment. He observed both men exiting the restaurant and one of the men getting into the driver's seat. When Sergeant Moore attempted to follow the car, the driver accelerated and eluded him.

On the evening of August 15, 2003, defendant again arrived at J.W.'s apartment looking for Peaches. Defendant forced those present to sit on the couch and damaged some property in the apartment. When S.O., who was living with J.W. along with her twelve-year-old brother, B.R., arrived at the apartment, defendant grabbed her by the neck and asked her where Peaches was. S.O. responded that Peaches was downstairs, having just dropped her off. Defendant went downstairs. He then came back up-

stairs, grabbed B.R. by the wrist, and pulled him out the door of the apartment.

After defendant removed B.R. from the apartment, defendant phoned S.O. and told B.R. to tell her one last time that B.R. loved her. B.R. overheard defendant tell S.O. that he would throw B.R. from the car at eighty miles an hour if he did not get Peaches back in less than half an hour. Approximately two hours later, B.R. returned to the apartment alone.

Defendant was arrested and charged with two counts of second degree burglary, one count of vehicular eluding, one count of third degree assault, and one count of first degree kidnapping. Defendant moved to sever the burglary and vehicular eluding charges, but that motion was denied. At the close of evidence, the trial court granted defendant's motion for judgments of acquittal on the burglary charges and denied defendant's renewed motion for severance of the vehicular eluding count. The jury found defendant guilty of vehicular eluding and first degree kidnapping of B.R.

## II. Equal Protection

■ Defendant first contends that his conviction for first degree kidnapping violated his right to equal protection because Colorado's first and second degree kidnapping statutes prohibit the same conduct but impose disparate penalties. We disagree.

■ Equal protection of the laws "is a guarantee of like treatment of all those who are similarly situated." *People v. Calvaresi,* 188 Colo. 277, 281, 534 P.2d 316, 318 (1975). Equal protection is violated where two statutes provide different punishments for the exact same criminal conduct. *People v. Westrum,* 624 P.2d 1302, 1303 (Colo.1981). However, equal protection is not offended if reasonable distinctions can be drawn between the statutes. *Westrum, supra.*

Section 18–3–301(1)(a), C.R.S.2006, with which defendant was charged, reads as follows:

(1) Any person who does any of the following acts with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control commits first degree kidnapping:

(a) Forcibly seizes and carries any person from one place to another. . . .

Second degree kidnapping occurs when a person "takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian or with intent to sell, trade, or barter such child for consideration." Section 18–3–302(2), C.R.S.2006.

Defendant argues that the inclusion of the terms "entices" and "decoys" in the second degree kidnapping statute means that the word "takes" necessarily prohibits only forcible seizures, and therefore prohibits the same conduct defined by § 18–3–301(1)(a). We do not agree with defendant's reading of § 18–3–302(2).

The terms "entices" and "decoys" imply the use of deceit or trickery rather than force to accomplish a kidnapping. *See Black's Law Dictionary* 572 (8th ed.2004) ("entice" means "[t]o lure or induce"); *Black's, supra,* at 440 ("decoy" means "[t]o entice (a person) without force; to inveigle"). However, that "entices" and "decoys" are limited to nonforcible seizures does not require "takes" to be limited to forcible seizures. The term "takes" may encompass nonforcible seizures that are different from those accomplished by enticement or decoy. *See Black's, supra,* at 1492 ("take" means both "[t]o obtain possession or control" and "[t]o seize with authority").

We conclude that a taking could occur without force, with the intent to keep or conceal the child from his or her parent or guardian or with intent to sell, trade, or barter such child for consideration, but without the child's being enticed or decoyed away. Therefore, contrary to defendant's assertion, the terms "entices" and "decoys" are not rendered meaningless by an interpretation of "takes" that encompasses nonforcible seizures.

We also note the obvious distinction that § 18–3–302(2) applies only to children. Therefore, we conclude that §§ 18–3–301(1)(a) and 18–3–302(2) do not prohibit ex-

actly the same criminal conduct while imposing disparate penalties, and defendant was not denied equal protection of the laws. *See Westrum, supra.*

### III. Motion to Sever

■ Defendant next contends that the trial court erred in denying his motion to sever the vehicular eluding count from the other counts with which he was charged. We disagree.

Crim. P. 8(a) provides for joinder of offenses (1) if they are "based on the same act or series of acts arising from the same criminal episode" or (2) "if the offenses charged ... are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." A defendant may be granted relief from joinder if it would result in prejudice to him or her. Crim. P. 14.

■ Whether to grant a motion to sever is within the discretion of the trial court. *People v. Smith,* 121 P.3d 243 (Colo.App. 2005). A trial court has abused its discretion in denying severance "where the joinder caused actual prejudice to the defendant and the trier of fact was not able to separate the facts and legal principles applicable to each offense." *Smith, supra,* 121 P.3d at 246. Joinder of offenses committed at different times and places but constituting part of a schematic whole is allowed in Colorado courts. *Smith, supra,* 121 P.3d at 246.

After the close of the evidence, the trial court denied defendant's renewed motion to sever the vehicular eluding count, but did not explain its reasoning. Defendant argues that the evidence of vehicular eluding would be inadmissible in a separate trial on the kidnapping count, and vice versa. Additionally, defendant stresses that the incidents on which the two remaining charges were based occurred on different days, and that the offenses are "wholly dissimilar" and "separate and independent transactions."

The record reveals that the events which occurred between the evening of August 14, 2003, and the early morning hours of August 16, 2003, were part of defendant's common plan to locate his girlfriend. *See Smith,* *supra.* Further, the jury was instructed that "the evidence ... applicable to each count should be considered separately," and there is no evidence that the jury failed to do so in this case. Additionally, defendant has not demonstrated that he suffered any actual prejudice from the joint trial of the offenses.

Thus, we conclude that the trial court did not abuse its discretion by denying defendant's motion to sever the vehicular eluding count. *See Smith, supra.*

### IV. Motion for Judgment of Acquittal

■ Defendant next contends that the trial court erred in denying his motion for judgment of acquittal on the vehicular eluding count. We disagree.

■ When ruling on a motion for judgment of acquittal, the issue before the trial court is "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Gonzales,* 666 P.2d 123, 127 (Colo.1983) (quoting *People v. Bennett,* 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

Section 18–9–116.5, C.R.S.2006, which defines the offense of vehicular eluding, provides:

> Any person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a reckless manner, commits vehicular eluding.

Defendant argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was the driver of the car. Specifically, defendant takes issue with Sergeant Moore's testimony regarding his observations of the men and the car at the restaurant. The exchange at trial was as follows:

Q: So you could see them from the time that they got up and left, and walked over to the car?

A: Yes.

Q: Which one do you recall got into the passenger—or the driver's seat? Or do you know?

A: He is in the courtroom.

Sergeant Moore then proceeded to identify defendant.

At the close of evidence, defendant moved for a judgment of acquittal on the vehicular eluding count. The trial court denied the motion, saying,

> As I perceive that question, and as I believe that the jury can perceive that question, was that [the prosecutor] first started to ask the passenger seat, and then stopped, and corrected himself, and said, or the driver's seat, and that the answer that Sergeant Moore gave was that it was the defendant, in the driver's seat.

We agree with the trial court's finding and conclude that the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that defendant is guilty beyond a reasonable doubt of vehicular eluding. *See Gonzales, supra.*

## V. Hearsay

■ Defendant next contends that Deputy Gregory's testimony regarding the telephone call he answered on S.O.'s cellular phone was inadmissible hearsay evidence. Again, we disagree.

■ Hearsay is defined as an out-of-court statement offered in evidence to prove the matter asserted. CRE 801(c). Hearsay is inadmissible unless it falls under one of the exceptions to the hearsay rule. As a general rule, hearsay statements are considered less reliable than other types of evidence because the declarant is not present to explain the statement in context and is not subject to cross-examination. *Blecha v. People,* 962 P.2d 931, 937 (Colo.1998).

At trial, Deputy Gregory testified that he answered a call on S.O.'s phone in the early morning hours of August 16, 2003. His testimony was as follows:

Q: Okay. When you answered the phone, tell us what happened?

A: I said hello.

Q: Okay.

A: And it—the person on the other line said put [S.O.] on the phone, and I said who is this, and the person then stated vulgar language.

The Court: Go ahead.

A: Put [S.O.] on the fucking phone, motherfucker. Then I identified myself as Deputy Gregory with the Adams County Sheriff's Office. I said, who is this? Is this Aaron? And the person on the line said, no, this isn't Aaron. Who is Aaron?

At this point in Deputy Gregory's testimony, defense counsel objected, arguing that the statement was hearsay unless the deputy could identify the speaker. The trial court overruled the objection without comment.

If we assume, as defendant contends, that the prosecution offered the evidence to prove "that the caller made a weak and implausible denial that he was [defendant], and that the caller was, therefore, [defendant]," that is not the matter asserted in the statements. Rather, the matter asserted is that the caller was *not* defendant. Thus, the caller's statements are not hearsay, and defendant's challenge on this point fails.

## VI. Prosecutor's Closing Argument

Finally, defendant contends that he was denied the right to a fair trial by an impartial jury because of improper statements made by the prosecutor during rebuttal closing argument. Specifically, defendant argues that the prosecutor improperly (1) vouched for witnesses' credibility, (2) denigrated defense counsel, (3) expressed his personal opinion, (4) argued facts not in evidence, and (5) appealed to the sympathies of the jury. We are not persuaded.

■ A prosecutor is entitled to wide latitude during closing argument. *People v. Walters,* 148 P.3d 331, 334 (Colo.App.2006).

However, he or she may not use closing argument to mislead or unduly influence the jury. *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005).

■ When determining whether the prosecutor's statements were improper and warrant reversal, we consider such things as

the language used, the context of the statements, whether a statement improperly expressed the prosecutor's personal opinion, whether the statement is an acceptable comment on the credibility of witnesses, the strength of the evidence, whether the evidence is conflicting or inconclusive, whether the prosecutor improperly appealed to the jurors' sentiments, whether the misconduct was repeated, and any other relevant factors.

*Walters, supra,* 148 P.3d at 335.

■ Absent a contemporaneous objection, we review a prosecutor's improper statements during closing argument for plain error. Crim. P. 52(b); *People v. Constant,* 645 P.2d 843 (Colo.1982). Prosecutorial misconduct during closing argument rarely constitutes plain error. *Walters, supra,* 148 P.3d at 335. To constitute plain error, a prosecutor's misconduct must be flagrant or glaringly or tremendously improper. *Constant, supra,* 645 P.2d at 847.

■ In contrast, when a proper mistrial objection is made and preserved in the trial court, we review the trial court's ruling for an abuse of discretion. *Constant, supra,* 645 P.2d at 847. However, we may consider defendant's failure to contemporaneously object as an indication of defendant's belief that the argument was not overly damaging. *See Domingo–Gomez, supra,* 125 P.3d at 1054.

■ At the beginning of his rebuttal closing argument, the prosecutor told the jury, "You should be insulted. They are hoping that you are not smart enough to put pieces together and to realize exactly what it was that happened that night." Defendant did not object to this argument. Though these statements could be considered expressions of the prosecutor's personal opinion regarding the defense's theory of the case, we conclude that they do not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the jury's verdict. *See Domingo–Gomez, supra,* 125 P.3d at 1053.

■ The prosecutor next commented on B.R.'s demeanor on the stand, saying,

You could look at one witness, and one witness alone, and come up with the reason for the first degree kidnapping charge, and that was [B.R.]. I ask you this, when he was up there, did it sound like he was faking any of this? He was on the verge of tears and trying to be brave. If he was faking it, he deserves an Academy Award. Based on him alone, and his testimony, he was a scared little kid that someone had threatened to throw him out of the car on the highway, and for what?

Although he did not contemporaneously object to this argument, defendant now asserts that these statements constitute improper vouching for witness credibility, an improper appeal to the sympathy and emotions of the jury, and an improper expression of the prosecutor's personal opinion. However, this portion of the prosecutor's argument is consistent with the instruction given to the jury that they "consider each witness'[s] ... state of mind, demeanor, and manner while on the stand." As such, we conclude that it is not improper. *See Constant, supra,* 645 P.2d at 846; *see also Walters, supra,* 148 P.3d at 335 (prosecutor may argue reasonable inferences to be drawn from a witness's demeanor when testifying).

■ The prosecutor later said,

[I]f all [the prosecution witnesses] are such liars and manipulators, and they are trying to do anything they can to get that poor innocent man there convicted of a crime he is not guilty of, why didn't their stories match perfectly? Why didn't they talk—they have had plenty of opportunity, nine months, to talk about this and get all of their stories straight. They are being honest with you.

Defendant did not object to this argument, and we conclude these comments relate to reasonable inferences regarding the credibility of witnesses. As such, they are not improper. *See Walters, supra; see also People v. Rivas,* 77 P.3d 882, 892 (Colo.App.2003).

Finally, at the conclusion of his rebuttal closing argument, the prosecutor said, "Ladies and gentlemen, find the defendant guilty of kidnapping, because that's what he did. He used a 12–year–old boy as a pawn, to try to get what he wants, and scared him to death, to the point that he still is scared of him this very day." Defendant's unspecified objection to these statements was overruled.

Here, the prosecutor did not express a personal opinion of defendant's guilt. Rather, he reiterated the prosecution's position that defendant was guilty of kidnapping. And though B.R. did not directly testify that he was still scared of defendant, the jury could infer this from B.R.'s demeanor on the stand, and thus it was not improper for the prosecutor to make such an argument. *See Walters, supra.* Therefore, we conclude the trial court did not abuse its discretion in overruling defendant's objection.

Based on our examination of the relevant factors, we conclude that the prosecutor's comments during closing argument did not deprive defendant of his right to a fair trial.

The judgment is affirmed.

Judge FURMAN and Judge NEY * concur.