23CA0125 Peo v Stearns 09-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0125
La Plata County District Court No. 21CR481
Honorable Suzanne F. Carlson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kenneth Allen Stearns,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Leah Scaduto, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kenneth Allen Stearns, appeals his judgment of conviction entered after a jury found him guilty of felony vehicular eluding.[1]  We affirm.

## I.     Background

¶ 2     A reasonable jury could have found the following facts based on the evidence presented at trial.

¶ 3     One afternoon in the fall of 2021, Stearns was driving his motorcycle when a La Plata County sheriff's deputy, Dean Brown, recognized him and determined that Stearns had outstanding arrest warrants.  As Stearns drove on U.S. Highway 160 with a passenger, later identified as Y.A., seated behind him, Brown (who was accompanied by a trainee, Deputy Ryan Davis) began following.  After confirming that the motorcycle was registered to Stearns, the deputies attempted a traffic stop, first by turning on their patrol car's red and blue lights, then by sounding its horn, and finally by turning on its sirens.  Stearns ignored the deputies, which led them to pursue him.

---

[1] At trial, Stearns was also found guilty of two counts of violating a protection order.  He does not challenge those convictions on appeal.

1

¶ 4      The pursuit — which was captured in its entirety on the deputies' dashboard camera — began near Durango, continued east on U.S. Highway 160 and then turned south and eventually east on State Highway 172 before being discontinued due to safety considerations.  Speeds varied, but at times the deputies were going ten to thirty miles per hour over the speed limit.  At their fastest, deputies hit eighty-seven miles per hour with Stearns still "pulling away . . . slightly."

¶ 5      The dashcam footage begins when Stearns exited U.S. Highway 160 and entered a parking lot from a side street.  The deputies turned on their patrol car's lights to initiate a traffic stop, but instead of slowing, Stearns accelerated, circled the parking lot, and ran a stop sign back onto the side street.

¶ 6      Stearns then re-approached U.S. Highway 160 on the side street.  As he neared a stop sign, an SUV was stopped in the left lane with its left turn signal on, apparently waiting to turn onto the highway.  Stearns approached the stop sign in the right lane and, without stopping or otherwise yielding to the SUV, turned left from the right lane onto U.S. Highway 160.

¶ 7     The deputies followed Stearns onto U.S. Highway 160 going east.  At one point, as Stearns approached an intersection with a red light, he drifted into the left turn lane but moved back to the right when the light turned green.  After several miles, Stearns turned right onto State Highway 172.  There were signs indicating road work ahead and also signs marking a school zone, although the school zone's reduced speed limits were not in effect at that time.  At one point, Stearns moved into a passing-prohibited turn lane to pass several cars, which had pulled over to the shoulder to allow him and the deputies to pass.  Later, Stearns approached another car, which pulled onto the shoulder to let him pass.  About six minutes into the pursuit, the deputies were instructed to discontinue.

¶ 8     An hour later, Stearns was arrested by the Southern Ute Police Department at a gas station.  When the police contacted him, they discovered that he was subject to two protection orders prohibiting him from contacting Y.A., his passenger.  Compliance with these orders was also a bond condition in one of his two pending misdemeanor cases.

¶ 9 At trial, Stearns conceded that he was guilty of the lesser included offense of careless driving, a misdemeanor, but maintained that he was not guilty of vehicular eluding. His argument focused on the lack of risk his flight posed to others and his "efforts to avoid and slow down for other vehicles on the road." The jury found Stearns guilty of vehicular eluding and he was sentenced to four years of probation.

¶ 10 Stearns now appeals his vehicular eluding conviction, contending that the district court erred by (1) allowing the deputies to provide expert testimony without first being qualified as expert witnesses and allowing them to usurp the jury's function as fact finder; and (2) overlooking prosecutorial misconduct in closing argument. Stearns also contends that these errors cumulatively deprived him of a fair trial.

## II. Deputies' Testimony

¶ 11 Stearns contends that the district court plainly erred by allowing certain testimony from Deputies Brown and Davis. We are not persuaded.

## A. Additional Facts

¶ 12    Both deputies testified at trial as lay witnesses during direct examination. Deputy Brown summarized his training and experience as a police officer, including elaborating on his high-speed and low-speed driving training. The prosecution then played the patrol car's dashcam video of the pursuit while Brown narrated the events. In response to the prosecutor's questions, Brown characterized several of Stearns's actions during the pursuit as "dangerous maneuver[s]," including his failure to stop before turning across U.S. Highway 160, his high rate of speed during the pursuit, and his decision to pass four cars in a passing-prohibited middle turning lane. Brown added that this last maneuver was "a violation of the law." On redirect, Brown clarified that, even though Stearns used his turn signal at some points and that road conditions were not bad, he was still driving dangerously because he was excessively speeding and running stop signs with a passenger on his motorcycle. Brown testified that neither personal injury nor property damage were necessary for driving to be considered dangerous.

¶ 13    Deputy Davis also recounted his training and certifications on the stand, including his driving training. Although his testimony was briefer than Brown's, he also characterized Stearns's turn across traffic onto U.S. Highway 160 and his decision to pass in a passing-prohibited turning lane as "dangerous maneuver[s]." The latter, he reiterated, was also a violation of the law.

### B.    Applicable Law and Standard of Review

¶ 14    CRE 701 defines the scope of lay witness opinion testimony. It provides that lay witness testimony in the form of opinions or inferences must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [CRE] 702."

¶ 15    CRE 702, on the other hand, concerns the admissibility of expert testimony. Under this rule, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." CRE 702.

¶ 16    In determining whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, a district court must look to the basis for the opinion.  *Venalonzo v. People*, 2017 CO 9, ¶ 16.  If the witness provides testimony that could be expected to be based on an ordinary person's experience or knowledge, then the witness is offering lay testimony.  *Id.*  If, on the other hand, the witness provides testimony that could not be offered without specialized experience, knowledge, or training, then the witness is offering expert testimony.  *Id.*

¶ 17    To establish the class 5 felony of vehicular eluding, the prosecution must show that the defendant operating a motor vehicle "knowingly elud[ed] or attempt[ed] to elude a peace officer also operating a motor vehicle," knew or reasonably should have known that he was "being pursued by said peace officer," and operated his vehicle "in a reckless manner."  § 18-9-116.5(1), (2)(a), C.R.S. 2025.  In comparison, the statute for the lesser included class 2 misdemeanor of careless driving requires the prosecution to show that the defendant operated a motor vehicle "in a careless and imprudent manner, without due regard for the width, grade, curves,

corners, traffic, and use of the streets and highways." § 42-4-1402(1), (2)(a), C.R.S. 2025.

¶ 18     We review evidentiary decisions for an abuse of discretion. *People v. Stewart*, 55 P.3d 107, 122 (Colo. 2002). Because Stearns's attorney did not object to the testimony that Stearns now challenges on appeal, we review for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. Under the plain error standard of review, a defendant bears the burden of establishing that an error occurred and that, at that time, the error was so clear cut and obvious that a trial judge should have been able to avoid it without benefit of objection. *People v. Conyac*, 2014 COA 8M, ¶ 54. And we reverse only if such an error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14.

## C.     Analysis

¶ 19     As Stearns puts it in his opening brief, the outcome of his trial "ultimately boiled down to the jurors' subjective judgment about whether Stearns's driving rose to the level of 'recklessness' or was merely 'careless.'" In other words, the main question that the jurors

had to decide was whether or not Stearns drove "in a reckless manner" during the pursuit. § 18-9-116.5(1).

¶ 20    Given that the jurors were shown dashcam footage depicting the entire pursuit, we are confident they were able to reasonably determine on their own whether Stearns drove recklessly during the chase. Each incident that the deputies described as a "dangerous maneuver" or a violation of the law was clearly shown in the footage, and the deputies' choice of words did not usurp the jury's role of determining whether Stearns's driving qualified as "reckless." Nor did the deputies' assertions regarding the legality of various actions require any particular expertise. *Venalonzo*, ¶ 16. Any licensed driver should know, for example, that running a stop sign violates traffic laws, as does driving more than thirty miles per hour over the posted limit.

¶ 21    We acknowledge that some of the deputies' testimony — particularly Brown's description of the reasons for calling off the chase — may have been closer to crossing the line between lay and expert testimony. Nonetheless, even if we were to assume that some of the testimony described above was improperly admitted, reversal would not be required under the plain error standard.

*Hagos*, ¶ 14. The deputies' narration of the footage did not occur in a vacuum. The defense extensively cross-examined Brown and, while the dashcam video played, pointed out that many of Brown's opinions about the dangerousness of Stearns's maneuvers were based on hypothetical circumstances that did not actually occur. Similarly, defense counsel's cross-examination of Davis drew an admission that the supposed risks related to Stearns's dangerous driving had not occurred. Most importantly, though, the jurors viewed the dashcam footage themselves, and in our view, nothing in either deputy's testimony seriously undermined the jurors' ability to rely on their own observations to assess whether Stearns drove recklessly during the pursuit. Accordingly, even if some of the deputies' testimony was improperly admitted, the error was not plain.

### III. Prosecutorial Misconduct

¶ 22 Stearns next argues that the district court erred by failing to intervene when the prosecutor allegedly (1) expressed his personal opinion that Stearns was guilty; (2) misstated the facts and law of the case; and (3) made a "golden rule" argument during closing. We disagree.

### A.    Applicable Law and Standard of Review

¶ 23    In reviewing a claim of prosecutorial misconduct, we conduct a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). We determine first whether "the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review." *Id.*

¶ 24    Because "[a]dvocates must be able to present their best case to achieve just results," prosecutors have "wide latitude in the language and presentation style used to obtain justice." *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). During closing argument, a prosecutor "may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence." *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006). However, a prosecutor's "arguments and rhetorical flourishes must stay within the ethical boundaries" that our supreme court has drawn. *Domingo-Gomez*, 125 P.3d at 1048.

¶ 25    Three of those ethical boundaries are not "express[ing] a personal belief or opinion as to [the] truth or falsity of [a witness's] testimony," *Wilson v. People*, 743 P.2d 415, 419 (Colo. 1987); not

intentionally misstating the evidence or the law, *Domingo-Gomez*, 125 P.3d at 1048-49; and not making "golden rule" arguments because "they encourage the jury to decide the case based on personal interest . . . rather than on a rational assessment of the evidence," *People v. Munsey*, 232 P.3d 113, 123 (Colo. App. 2009).

¶ 26    Where, as here, a defendant did not preserve a claim of error by objecting at trial, appellate review is circumscribed by the plain error standard of Crim. P. 52(b).  The defendant must show that the prosecutor's arguments were "flagrantly, glaringly, or tremendously improper."  *Domingo-Gomez*, 125 P.3d at 1053 (citation omitted).  Also, because courts do not reverse convictions to punish prosecutors, the defendant must show that the arguments so undermined the trial's fundamental fairness as to cast doubt on the judgment's reliability.  *People v. McBride*, 228 P.3d 216, 221 (Colo. App. 2009).  Given these demanding requirements, "[p]rosecutorial misconduct in closing argument rarely constitutes plain error."  *Id.* (alteration in original) (quoting *Liggett v. People*, 135 P.3d 725, 735 (Colo. 2006)).

## B. Additional Facts

¶ 27 Stearns contends that the following statements, all of which occurred during the prosecutor's closing argument, require reversal for plain error:

(1) "[T]he argument comes down to whether or not Mr. Stearns'[s] driving was reckless, and I want to tell you his driving was indeed reckless."

(2) "[W]e heard . . . the police deemed [the pursuit] too dangerous to continue. In their professional driving, they deemed this too dangerous to continue. They terminated due to a substantial and unjustifiable risk to the defendant himself, to the passenger, to the public, and to the officers themselves."

(3) "[Stearns] consciously disregarded everyone's safety and he drove this way, this way that we all saw on the dash cam."

(4) "He drove this way . . . over the safety of everyone in La Plata County."

(5) "[Stearns's driving was] a conscious disregard for a substantial risk; a risk to himself, a risk to his

13

passenger, and a risk to the public as a whole.  He put

the community at risk when he made that conscious

decision."

¶ 28    During rebuttal closing, the prosecutor made the following

statement:

(6)    "The very nature of running from the police is a

conscious disregard for a substantial risk.  There is a

substantial risk that something is going to happen when

you run from the police, and [Stearns] made that decision

consciously to continue driving."

### C.    Analysis

#### 1.    Personal Opinion

¶ 29    Stearns first contends that the prosecutor impermissibly gave

his personal opinion that Stearns was driving recklessly when he

said, "I want to tell you his driving was indeed reckless."  After

considering this statement in context, we disagree.  Rather than

representing an improper personal opinion, the prosecutor's

assertion was instead a rhetorical device that served to introduce a

detailed discussion of the evidence.  *See People v. Esquivel-Alaniz*,

985 P.2d 22, 23 (Colo. App. 1999) ("A contention that the

prosecution engaged in improper argument must be evaluated in the context of the argument as a whole and in light of the evidence."); *People v. Ortega*, 2016 COA 148, ¶ 27 ("[B]ecause arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." (citation omitted)). Consistent with that interpretation, we note that the prosecutor's subsequent remarks included highlighting Stearns's left turn from the right lane onto U.S. Highway 160, his speeding, and his decision to pass in a no-passing lane. Accordingly, the record does not support Stearns's contention that the prosecutor's statement improperly injected his personal opinion of Stearns's guilt. *See People v. Kendall*, 174 P.3d 791, 798 (Colo. App. 2007) (holding that the prosecutor's statement, "[F]ind the defendant guilty of kidnapping, because that's what he did," was not a personal opinion but rather a reiteration of the prosecution's position that the defendant was guilty of kidnapping).

### 2. Misstating the Facts and Law

¶ 30    Stearns next asserts that the prosecutor misstated the facts when he said, "[I]n [the deputies'] professional driving experience,

15

they deemed [the pursuit] too dangerous to continue." He contends that this statement implied that the deputies provided expert testimony rather than lay testimony, and that it therefore "imbued the officers' testimony with the weight of expertise." Again, we disagree. The challenged statement was a reference to the reasons that the deputies were ordered to call off the chase, which included factors like traffic conditions, the type of vehicle Stearns was driving, and the fact that he had a passenger, among others. It was a practical summation of the deputies' description of the pursuit and an accurate explanation for why it was terminated after six minutes.

¶ 31 Even assuming the prosecutor's phrasing could have been understood as suggesting that the deputies gave expert rather than lay testimony, reversal would not be required under the plain error standard. *See Hagos*, ¶ 14; *Ortega*, ¶ 27. Many of the factors that led to the termination of the pursuit were visible on the dashcam footage, and the reasoning underlying that decision was just one of many pieces of evidence that the prosecutor urged the jury to consider when deciding whether Stearns drove recklessly.

¶ 32    Stearns also argues that the prosecutor lowered the burden of proof during rebuttal closing when he said, "The very nature of running from the police is a conscious disregard for a substantial risk." He contends that this statement suggested to the jury that any flight from the police qualifies as vehicular eluding, regardless of whether it is done recklessly. But when this statement is read together with the remainder of the closing argument, it becomes clear that the prosecutor was not suggesting that the jury should minimize — much less dispense with — the requirement that Stearns drove recklessly during his flight from police. Indeed, the prosecutor repeatedly highlighted Stearns's actions throughout his closing and rebuttal arguments, urging the jury each time to find that those acts were done recklessly. Given this context, we conclude that this statement does not substantially undermine our faith in his conviction.

### 3.    Golden Rule

¶ 33    Finally, Stearns asserts that the prosecutor made an impermissible "golden rule" argument when he argued that Stearns put running from his warrants "over the safety of everyone in La Plata County" and "put the community at risk" by choosing to flee

17

from the deputies. This generalized statement accurately reflected the "clear intent" of the vehicular eluding statute: "[T]o protect members of the public from the dangers created by a driver attempting to elude a police officer." *People v. Fury*, 872 P.2d 1280, 1283 (Colo. App. 1993). It did not ask the jurors "to place themselves in the victim's position" or otherwise "encourage the jury to decide the case based on personal interest and emotion rather than on a rational assessment of the evidence." *Munsey*, 232 P.3d at 123. It was therefore not improper.

## IV.  Cumulative Error

Because the district court did not commit multiple errors, reversal is not warranted for cumulative error. *Howard-Walker v. People*, 2019 CO 69, ¶ 26 ("[R]eversal is warranted when numerous errors in the aggregate show the absence of a fair trial, even if individually the errors were harmless or did not affect the defendant's substantial rights.").

## V.  Disposition

We affirm Stearns's judgment of conviction.

JUDGE J. JONES and JUDGE SCHUTZ concur.