2012 COA 41

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jeremy Rashon ESTES, Defendant–Appellant.**

**No. 10CA2185.**

Colorado Court of Appeals, Div. A.

March 15, 2012.

190

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jon W. Grevillius, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

¶ 1 Defendant, Jeremy Rashon Estes, appeals from the judgment entered on jury verdicts finding him guilty of felony menacing and assault in the third degree. We address, among other issues, the prosecutor's use in closing argument of an improper explanation of the presumption of innocence previously disapproved in *People v. McBride,* 228 P.3d 216, 223 (Colo.App.2009), and *People v. Villa,* 240 P.3d 343, 356 (Colo.App. 2009). We affirm.

## I. Factual Background

¶ 2 The prosecution presented the following evidence: A seven-year-old boy told his father that, while he had been riding his bicycle, a neighbor, Luciano Briones, hit him on the back as he rode by. Around midnight that night, defendant (the boy's cousin) went to Briones's home and banged repeatedly on the front door. Briones, who does not speak English, accompanied by his wife and two daughters, ages thirteen and six, came to the door. Defendant screamed at Briones and asked why he had hit his cousin. According to the thirteen-year-old's testimony, defendant was "angry and seemed kind of drunk."

¶ 3 With the thirteen-year-old translating, Briones apologized, explaining that it had been an accident. As defendant began to walk away, Briones's brother, Jose, who, with two coworkers, was coming home from work, pulled his van into the driveway. While Jose and his coworkers were still seated in the van, defendant changed course and headed back to Briones's front yard, claiming that Jose had tried to hit him with the van door. Jose got out of the van and stood between defendant and the fence in front of the property to stop defendant from entering. While insisting that he be allowed on the property, defendant punched Jose in the face. Briones pulled at defendant's shirt to get him to stop hitting Jose. Defendant stepped back, pulled out a gun, and pointed it at everyone present.

¶ 4 At Briones's direction, his daughter went inside and called 911. Defendant ran away, and, after a foot chase, the police found him in a neighbor's yard. He was charged with two counts of menacing and one count of third degree assault. A jury found him guilty of all charges. Defendant appeals.

## II. Trial Court's Comments During Voir Dire

¶ 5 Initially, although we find no prejudicial error, we agree in part with defendant's objections, made for the first time on appeal, to the comments made by the trial court during voir dire.

### A. What the Trial Court Said

¶ 6 Explaining to potential jurors the "difference between not guilty and innocent," the court said:

> This defendant did something. I'm going to tell you that right now, he did something. We didn't just walk out to the bus stop this morning and find [defendant] sitting there waiting for a bus and say: Guess what ... this is your lucky day.
>
> Okay? Obviously, he did something.
>
> But ladies and gentlemen ... [y]our job is not to decide if the defendant did something.

Your job is to decide whether the prosecution's evidence in this case proves beyond a reasonable doubt to your satisfaction that the defendant committed the offenses he's charged with. So even if he did something else, you heard me read the charges that he threatened somebody with a gun and that he assaulted somebody ... if the prosecution proves that at the same time he was speeding, he's not charged with speeding, you can't find him guilty of speeding....

¶ 7 To explain that some acts, although completely legal, may lead to indictment or arrest, the court then offered a hypothetical in which a woman fills up her car at a gas station, pays at the pump with a credit card, and does not take a receipt. When the person at the next pump drives away without paying for gas, the sales clerk mistakenly reports the woman's license plate number to the police. She is unable to produce a receipt when stopped by the police, and thus ultimately ends up in court as a criminal defendant. The court thus reiterated that some act performed by defendant had led to his arrest and indictment, but that act may not have been illegal.

## B. The Explanation Was Confusing

¶ 8 Apparently, the trial court used this explanation in criminal jury trials as a matter of course, and, although not resulting in reversal, these identical comments have been disapproved in several unpublished opinions of this court. *See, e.g., People v. Bonilla-barrera,* (Colo.App. No. 09CA0462, 2012 WL 680867, Mar. 1, 2012) (not published pursuant to C.A.R. 35(f)) ("We do not condone the trial court's statement that defendant 'did something.' "); *People v. Williams,* (Colo.App. No. 09CA0906, 2012 WL 91377, Jan. 12, 2012) (not published pursuant to C.A.R. 35(f)) (similar); *People v. Cruz–Avila,* (Colo.App. No. 09CA1957, 2011 WL 6109310, Dec. 8, 2011) (not published pursuant to C.A.R. 35(f)) (similar); *People v. Harris,* (Colo.App. No. 09CA1626, 2011 WL 5288276, Nov. 3, 2011) (not published pursuant to C.A.R. 35(f)) (similar); *People v. Edwards,* (Colo.App. No. 08CA1764, 2010 WL 3169389, Aug. 12, 2010) (not published pursuant to C.A.R. 35(f)) (similar).

¶ 9 Defendant raises the same concern here, arguing that these statements improperly suggested to the jury that an unlawful act had been performed and that defendant justifiably was suspected of committing it. He also points out that by stating, "[W]e didn't just walk out to the bus stop this morning ..." (emphasis added), the court placed itself in the same position as the prosecutor, suggesting that it approved of defendant's arrest and charges, thus violating defendant's right to an impartial judge.

■ ¶ 10 We agree in part. The court should have avoided any suggestion that defendant "did something." Although it explained that defendant may have done nothing illegal, its prior statements were confusing and could have suggested to prospective jurors that the court believed the suspicion against defendant, and thus, the charges leveled by the prosecution were warranted. This confusion was compounded by the court's use of "we," which improperly aligned the court with the prosecution, implying that it found the evidence against defendant sufficient to justify his standing trial. *See People v. Coria,* 937 P.2d 386, 391 (Colo.1997) (trial judge has wide discretion in conducting trial, but "must exercise restraint over his or her conduct and statements to maintain an impartial forum").

¶ 11 We understand that, by these comments, the court was attempting to dispel any assumption potential jurors might hold that defendant would not have been arrested and brought to trial if he had not done something illegal. Nonetheless, any suggestion that defendant had done something to result in his standing trial risked inviting the jurors to assume that defendant had a bad character or to discard the possibility that he may have been arrested and charged through mistake or inadvertence.

## C. No Substantial Prejudice

■ ¶ 12 However, we do not agree with defendant's contentions that the comments either lessened the prosecution's burden of

proof or refuted the presumption of innocence. *See People v. Martinez*, 224 P.3d 1026, 1030 (Colo.App.2009) ("[C]asual remarks by the trial court ... do not constitute reversible error unless they reflect adversely upon the defendant or upon the issue of his or her guilt or innocence."), *aff'd*, 244 P.3d 135 (Colo.2010). Taken in context, these comments explained how a person might end up in court despite having done nothing illegal. Moreover, the risk of prejudice here was mitigated by the court's written jury instructions and other statements correctly explaining the applicable burdens and presumptions, and we presume that the jury followed the court's instructions. *See People v. Lucas*, 232 P.3d 155, 163 (Colo.App.2009). Thus, although we disapprove the court's explanation as confusing, it does not constitute reversible error.

### III. No Evidentiary Error

¶ 13 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Welsh*, 80 P.3d 296, 304 (Colo.2003).

■ ¶ 14 The gun defendant pointed at Briones and his family was never found. A police officer who investigated the case testified, over defendant's objection, that when the police search for a missing gun, they find it in less than ten percent of cases. At trial, defendant unsuccessfully challenged the admission of this testimony as irrelevant. We perceive no abuse of discretion.

¶ 15 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *see People v. Jimenez*, 217 P.3d 841, 866 (Colo.App.2008) (the question is whether "there is a logical relation between the proffered testimony and the factual issues involved in the case") (quoting *People v. Ramirez*, 155 P.3d 371, 379 (Colo. 2007)).

¶ 16 In her opening statement, defense counsel told the jury, "[T]he evidence that you will hear in this case will not show that [defendant] ever had a gun." And, while cross-examining the police officer, she asked, "[N]o gun was ever found, is that right?" The officer replied, "That's correct."

¶ 17 On redirect, the prosecutor asked, "In your experience as an officer, what's the percentage of cases that you have in which a weapon is searched for, looked for, and that that gun is actually found ... ?" After the court overruled defendant's objection, the officer answered, "[W]e find the gun or somebody has turned it in, probably below 10 percent."

¶ 18 Defendant argues that although evidence showing that he had possessed a gun was relevant, whether police typically recover weapons for which they search was not. We disagree. In his cross-examination, defendant implied that the failure to recover a gun decreased the probability that he had possessed one at all. Thus, evidence that the police rarely recover a missing gun in cases in which one is reported was offered properly to rebut this inference. *See People v. Dunlap*, 124 P.3d 780, 799 (Colo.App.2004) ("When the defense opens the door to a topic, the prosecution has a right to explain or rebut any adverse inferences that might have resulted from the questions.").

### IV. Three Allegations of Prosecutorial Misconduct

■ ¶ 19 Defendant raises three allegations of prosecutorial misconduct. He did not object to any of the statements that he now challenges on appeal. Therefore, we review each of his contentions for plain error. *People v. Hogan*, 114 P.3d 42, 56 (Colo.App. 2004); *see* Crim. P. 52(b). Plain error is error that is "obvious and substantial," and "so undermine[s] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)). Prosecutorial misconduct rarely constitutes plain error. *See McBride*, 228 P.3d at 221; *People v. Walters*, 148 P.3d 331, 335 (Colo.App.2006) (citing *People v. Constant*, 645 P.2d 843, 847 (Colo. 1982)).

¶ 20 We disagree with defendant's contentions that the prosecutor's comment during opening statement concerning defendant's

statement to the police, and the comment during closing argument concerning self-defense constituted error. And although we agree with defendant that the statement concerning the presumption of innocence amounted to error that was obvious and substantial, we cannot say that our confidence in the reliability of the verdict is shaken by this error, even considering the trial court's confusing comments made to prospective jurors during voir dire.

## A. No Error in Opening Statement

¶ 21 The prosecutor did not impermissibly suggest in his opening statement that defendant had lied to the police.

¶ 22 When the police found defendant in a neighbor's yard, he told them that he lived nearby with his girlfriend, but she had thrown him out of the house that evening. During his opening statement, the prosecutor described this exchange as defendant "making up" a story explaining his presence in the yard. Defendant argues that this was an "inappropriate opinion statement," which characterized him as a "liar." We disagree.

¶ 23 It is "categorically improper" for a prosecutor to assert his or her opinion that a defendant has lied or is a liar. *Wend v. People*, 235 P.3d 1089, 1096–97 (Colo.2010); *Crider v. People*, 186 P.3d 39, 41 (Colo.2008); *see also Domingo–Gomez v. People*, 125 P.3d at 1043, 1050 (Colo.2005). But, during opening statement, a prosecutor may refer to evidence that subsequently will be adduced at trial and draw inferences from that evidence. *People v. Pigford*, 17 P.3d 172, 177–78 (Colo.App.2000); *People v. Merchant*, 983 P.2d 108, 115 (Colo.App.1999).

¶ 24 Here, the prosecutor did not use the inflammatory word "lie" or any of its variations. More important, having read the prosecutor's opening in context, we conclude that the comment merely introduced discussion of evidence the prosecutor explained would be developed at trial: that defendant's girlfriend at the time had not seen defendant for several days prior to the incident and, thus, could not have thrown him out of the house that evening.

¶ 25 This was proper opening statement and we find no error. *See, e.g., Pigford*, 17 P.3d at 177–78.

## B. Closing Argument

### 1. No Error in Self–Defense Comment

¶ 26 Discussing self-defense during closing argument, the prosecutor said, "[T]here's not an affirmative defense in this case that applies," and, "There's no evidence that the victims in this case ever threatened the defendant or used physical force against him." We disagree with defendant that these comments were improper.

¶ 27 "During closing argument, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence." *Walters*, 148 P.3d at 334.

¶ 28 During trial, the prosecutor submitted evidence that contradicted defendant's statement to police that Jose had tried to hit him with the van door, or did anything at all to provoke or threaten defendant. Thus, understood in its context, the prosecutor's comment was not a legal assertion to the jury that it could not consider defendant's affirmative defense of self-defense, but was appropriate comment on the strength of defendant's evidence supporting his self-defense theory and the manner in which other evidence contradicted that theory. *See People v. Esquivel–Alaniz*, 985 P.2d 22, 23 (Colo.App.1999) ("[C]omment on the lack of evidence confirming a defendant's theory of the case is permissible and does not shift the burden of proof.").

### 2. Error in Comment on Presumption of Innocence

¶ 29 The prosecutor's comment on the presumption of innocence, however, was not appropriate.

¶ 30 At the beginning of his closing argument, the prosecutor said:

[W]hen [this trial] started, you were told that you have the presumption of innocence. That presumption of innocence, after the evidence has come in, that cloak,

the presumption of innocence is now gone.... You have the evidence. You have all that you need and ... you should have to find the defendant guilty.

¶ 31 Similar prosecution comments were disapproved, respectively, in *McBride*, 228 P.3d at 223, and in *Villa*, 240 P.3d at 356. We express the same sentiment here: the prosecutor's explanation of the presumption of innocence was improper and should not be repeated.

### a. The comment was legally wrong.

¶ 32 "[A] defendant 'retains a presumption of innocence *throughout the trial process.*'" *McBride*, 228 P.3d at 223 (quoting *Martinez v. Court of Appeal*, 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000)) (emphasis in *McBride*). The presumption remains in place unless and until a jury returns a guilty verdict, *District Attorney's Office v. Osborne*, 557 U.S. 52, 68–70, 129 S.Ct. 2308, 2320, 174 L.Ed.2d 38 (2009); *McBride*, 228 P.3d at 224, terminating only if the jury concludes that the prosecution has proved beyond a reasonable doubt that the defendant is guilty of the charge against him or her, e.g., *Clark v. Arizona*, 548 U.S. 735, 738, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006); *Herrera v. Collins*, 506 U.S. 390, 399, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.").

¶ 33 Thus, as a jury evaluates the evidence against a defendant, it must continue to presume him or her innocent until it concludes that the evidence proves the defendant guilty beyond a reasonable doubt. *See Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993) ("The presumption [of innocence] operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt.").

¶ 34 The prosecutor's comment here, that the evidence against defendant itself was sufficient to weaken or eliminate the presumption of innocence, wrongly suggested that the jury need not presume defendant innocent as it deliberated upon that evidence. *See McBride*, 228 P.3d at 223–24 (holding that the prosecutor's comment that the defendant "sits here in front of [the jury] a guilty man," was erroneous and "should not be repeated in future cases"); *Mahorney v. Wallman*, 917 F.2d 469, 471 (10th Cir.1990) (disapproving prosecutor's statement: "[A]t this time, under the law and under the evidence, [the presumption of innocence] has been removed, ... that presumption no longer exists ... and [the defendant] is standing before you now guilty. That presumption is not there anymore."); *Miller v. State*, 843 P.2d 389, 390 (Okla.Crim.App.1992) (disapproving prosecutor's statement: "[T]he defendant stands guilty as charged and the cloak of innocence that he wore ___ when you heard the evidence is all through now.... [It] is gone. It's been ripped away from him by the testimony of [four] men ....").

¶ 35 In defense of the prosecutor's conduct, the People argue that such comments should be understood as merely a request to the jury to find that the prosecution's case was strong enough to "remove" the presumption. In support, they rely on language in *Villa*, which suggested that similar statements made in that case were intended simply as comment on the strength of the prosecution's evidence. 240 P.3d at 356 (comments were not misstatements of the presumption of innocence but merely "suggestion[s] that the prosecution's overwhelming evidence removes the presumption of innocence to which defendant was entitled").

¶ 36 To the extent that that statement in *Villa* can be understood as the People urge, we disagree with it. To the contrary, a comment that suggests to a jury that the presumption of innocence may be eliminated at any time before the jury arrives at a guilty verdict—whether upon the close of evidence, or otherwise—is a misstatement of the law. *McBride*, 228 P.3d at 224.

¶ 37 Thus, because the presumption of innocence does not terminate until a jury returns a guilty verdict, we conclude here, as did the division in *McBride*, that the prosecutor's statement in closing argument, that the presumption of innocence that had existed

when the trial began was "gone," was improper

### b. The error was obvious.

 ¶ 38 That the prosecutor's comment was improper should have been obvious to the trial court. *See id.* at 223 (reversing conviction where law was clearly established and prosecutor was thus "on notice" that comments contradicted that law) (citing *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Even in *Villa,* as discussed, the division did not approve of nearly identical comments. 240 P.3d at 356.

### c. The resulting prejudice was not substantial.

 ¶ 39 However, we will not find plain error unless the claimed error so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the verdict. *People v. Munsey,* 232 P.3d 113, 123 (Colo. App.2009) ("Improper prosecutorial comments alone cannot mandate reversal unless it is shown that, in the context of the entire trial, they amounted to prejudicial error."); *McBride,* 228 P.3d at 225. Factors relevant to this determination are the nature of the error and the risk of prejudice associated with it, the pervasiveness of the misconduct, and the strength of the admissible evidence supporting the verdict. *McBride,* 228 P.3d at 225 (citing *Crider,* 186 P.3d at 43).

 ¶ 40 The risk here was that the jury would fail to presume defendant innocent as it deliberated upon the evidence as a whole. However, any such risk was significantly abated by the legally correct instructions on the presumption of innocence given by the court to the jury during voir dire and at the close of evidence. *See People v. McKeel,* 246 P.3d 638, 641 (Colo.2010); *People v. Ibarra,* 849 P.2d 33, 39–40 (Colo.1993); *cf. Mahorney,* 917 F.2d at 473 (misstatement on presumption of innocence made trial fundamentally unfair in light of lack of specific instructions from trial court explaining proper relationship of the presumption to the trial process).

¶ 41 Furthermore, the prosecutor made the comment only at the outset of his closing argument and did not repeat it at any other point during the trial, including the rebuttal closing. *See Munsey,* 232 P.3d at 124 (where there are no other allegations of prosecutorial misconduct during closing, it is unlikely that isolated portion of closing argument substantially influenced the verdict); *cf. Harris v. People,* 888 P.2d 259, 268 (Colo.1995) (reversal required where improper comments repeated over the course of the entire closing argument).

¶ 42 Also, we consider, for purposes of this or any other error here, the overwhelming evidence supporting the guilty verdict. The trial was uncomplicated and rested almost entirely on the jury's view of three witnesses' testimony that, without provocation, defendant had hit Jose in the face and, then, pointed a gun at them. All of these witnesses were thoroughly and competently cross-examined by defense counsel and the jury was properly and correctly instructed on the assessment of witness credibility. *See People v. Greenlee,* 200 P.3d 363, 367 (Colo. 2009) ("[T]he jury is the sole judge of the credibility of the witnesses.") (quoting *People v. Barker,* 189 Colo. 148, 149, 538 P.2d 109, 110 (1975)); *cf. McBride,* 228 P.3d at 226 (reversing conviction where prosecution offered no direct evidence concerning one element of the crime).

¶ 43 Moreover, it was highly unlikely that a reasonable jury considering the evidence would have accepted defendant's theory of self-defense. The record is replete with evidence contradicting any defense suggestion that Jose had tried to hit defendant with the van door, or that Jose or his coworkers were threatening defendant when defendant assaulted Jose and pulled out a gun. Similarly, there was substantial and convincing evidence that when defendant turned and went back to the property, Briones had continued to offer apologies; that defendant was acting out of control when he hit Jose, who had merely inserted himself between defendant and the fence to prevent defendant from coming back onto his brother's property; and that when Briones pulled at defendant's shirt, it was only to stop defendant from hitting Jose again.

¶ 44 Thus, as in *Villa* and *McBride,* we disapprove of the prosecutor's comment; however, as in *Villa,* and unlike in *McBride,* we conclude that the misconduct was not sufficiently prejudicial so as to undermine our confidence in the verdict and, therefore, reversal is not warranted. *See McBride,* 228 P.3d at 221 (court may not reverse conviction merely to punish prosecutor) (citing *Crider,* 186 P.3d at 44).

¶ 45 Accordingly, although we have identified two errors in this trial, we conclude that there is insufficient prejudice resulting from either, considered separately or together, to warrant a new one.

¶ 46 The judgment, therefore, is affirmed.

Judge VOGT * concurs.

Judge ROTHENBERG * dissents.

Judge ROTHENBERG dissenting.

¶ 47 I respectfully dissent.

¶ 48 A defendant is not entitled to a perfect trial, only a fair one. This is because, despite the hard work and good intentions of the principals in the courtroom—the trial judge, prosecutor, defense counsel, and members of the jury—errors regularly occur. On appeal, we must determine whether these errors had a prejudicial effect on the trial. We do this by viewing the errors in the context of the trial as a whole and the strength of the prosecution's evidence. In some cases, the weight of the prosecution's evidence is so strong that we can conclude the errors could not have reasonably affected the verdict. I am unable to reach that conclusion here.

¶ 49 This case arose from a minor neighborhood incident. According to the prosecution's evidence, around 7 p.m. in July 2009, a seven-year-old boy was riding his bicycle near his house and passed very close to his neighbor, Luciano Briones, while Briones was exiting his car. Briones inadvertently touched the boy on his back as the boy rode past, but the boy apparently reported to his father that Briones had intentionally "hit

him," and the father called the police. Briones, a Hispanic, lives with his wife and two daughters. Neither he nor his wife speaks English.

¶ 50 Later that same day, the boy's eleven- or twelve-year-old brother went to the Briones' home to talk about the incident. Briones testified at trial through an interpreter that he "didn't pay any attention to [the older brother] because he was a little boy."

¶ 51 Defendant is an African–American who apparently does not speak or understand Spanish. At the time of this incident, he was living with his girlfriend a few houses from the Briones residence, and he was very friendly with the family of the boy involved in the incident. When defendant heard about the incident from the boy's family, he became very upset and around 11:30 p.m. that night, he walked to the Briones' home and demanded to know why Briones had hit the boy. Briones, his wife, and his thirteen-year-old daughter stood at the front door of their house with defendant while the daughter attempted to interpret for her parents.

¶ 52 Briones kept telling defendant— through his daughter—that it was just an accident, but defendant could not understand him. Briones and his daughter then went outside the house to talk further with defendant when Briones' brother—who also speaks no English—pulled up in a van at Briones' home. Two of the brother's coworkers were also in the van, and all three men got out. An altercation then occurred which resulted in the charges lodged against defendant.

¶ 53 Apparently, defendant initially left the Briones' yard because the prosecutor asked Briones, "When you had the conversation with [defendant], how did the conversation end, or what happened next in the conversation?"

> Briones: Well, [defendant] finally turned around and left. He left by the hallway of the house, and then we were just looking to see if he was going to take off.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

And my brother had just arrived from work, and he was parked in his van in the driveway. So these men was [sic] saying that my brother was trying to hit [defendant], but I don't understand why he was saying that because my brother never got out of his car.

So [defendant] was insisting on coming back to the front yard where I was. And to be able to stop him from coming, my brother got out of the car and he was standing in front of him.

Prosecutor: How many people were outside at this point?

Briones: It was my wife, my daughter . . ., my brother, myself, and two [of his brother's] coworkers.

¶ 54 According to Briones, defendant punched the brother in the face, Briones pulled at defendant's shirt, defendant pulled out a gun and pointed it at them, and then he ran home. Defendant denied that he had a gun, and despite a search by the police of the area and the yard of defendant's house, no gun was found.

¶ 55 The prosecution called defendant's former girlfriend as a witness. She testified that, at the time of the incident, defendant had been living with her, but they had had an argument before that night. She stated that defendant did not carry a gun, and that the police had searched her backyard and garbage after the incident.

¶ 56 Briones' brother and his thirteen-year-old daughter also testified at trial. The daughter stated that, after the initial conversation between defendant and her father, "[D]efendant left our house . . . and we didn't see him anymore." She continued, "And then he came back, and he was trying to get in the yard, and that's when he saw my uncle in the—in the van, and he came back to try to start a discussion with them."

¶ 57 The prosecutor asked, "What was [defendant] saying, or what was he doing? She answered:

[Defendant] said something about . . . hitting him with the door of the van.

[Defendant] was trying to get in the yard and telling my uncle to move because he was between the fence and the—the van,

so he couldn't get in the house. . . . [My father] went to go put his hand in between [defendant] and my uncle so they—so they wouldn't start punching. . . . [A]nd that's when [defendant] punched my uncle. And then my dad grabbed him by the shirt so—so he wouldn't go in the yard. And that's when he stood back and pulled the gun out.

¶ 58 The other witnesses who testified did not see the actual incident.

¶ 59 The prosecutor's case thus turned on the credibility of Briones, his daughter, and his brother. Arguably, their credibility was undermined by the testimony of the investigating officers, who interviewed the three witnesses while they were all together, rather than separating them for questioning. Also, at the time they were questioned, Briones had not been cleared of the accusation that he had struck the neighbor's young son while he was on his bicycle.

¶ 60 I conclude the following four plain errors occurred during this trial.

I. Voir Dire Error by the Court

¶ 61 When the jury selection began, the trial court conducted a lengthy oral discourse with the jurors that lasted for approximately seventy pages of the reporter's transcript. The court did not ask individual jurors about their backgrounds or interests but sought to educate them regarding basic principles of law. However, in doing so, the trial court made an improper and confusing statement regarding the presumption of innocence by telling the jurors, "Obviously, [defendant] 'did something' to put himself in his current position." As the majority has explained, this type of colloquy ran the risk of suggesting to prospective jurors that the charges were warranted, implying that "where there's smoke, there's fire."

¶ 62 As the majority has noted, the type of statement made by the trial court here has been disapproved by this and other courts because it is contrary to the requirement that jurors presume the innocence of the accused throughout the trial and until the verdict is reached. *See State v. Drayton*, 293 S.C. 417, 361 S.E.2d 329, 333 (1987) (disap-

proving of trial court's remarks to the jury, "A lot of times people say, 'Well, where there's smoke, there's fire.' You hear these things everyday"; concluding such comments were "imprudent" and "should be avoided in the future").

¶ 63 *Guthmiller v. Weber,* 804 N.W.2d 400, 403 (S.D.2011), involved a situation very similar to the one in this case. There, defense counsel asked the jurors during voir dire: "Does anybody feel that ... where there's smoke there's fire? If someone has been charged with a crime that necessarily means that, you know, he's done something?" The trial judge interjected:

> Well, [counsel], that's not right. The police in South Dakota don't just go out on the street and round people up and bring them in here, so something had to be done. The question is will you make the State prove beyond a reasonable doubt that the Defendant is guilty or not[?]

*Id.*

¶ 64 The South Dakota Supreme Court disapproved the trial court's remark, explaining:

> [T]he judge insinuated that [the defendant] must have done something wrong or the police would not have arrested him. This comment was clearly improper. In jury trials, judges must not weigh in on the evidence, pass on the credibility of witnesses, or otherwise give their personal impressions to the jurors. Regardless of the judge's reason for the comment, it was an accusatory remark against [the defendant].

*Id.* at 405 (footnote omitted).

¶ 65 I agree with the majority that the comment made in this case also constituted plain error.

## II. Prosecutor's Error During Opening Statement

¶ 66 During the prosecutor's opening statement, he told the jury that defendant's statement to the police when he was arrested was a "made up" story. Unlike the majority, I conclude this statement also constituted plain error.

¶ 67 Although the prosecutor did not explicitly state that defendant had "lied to the police" he implied that defendant had done so. Such statements have been repeatedly disapproved by the Colorado Supreme Court. *See Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005) ("[A] prosecutor cannot communicate [his or] her opinion on the truth or falsity of witness testimony....").

## III. Prosecutor's Errors During Closing Argument

¶ 68 After the presentation of evidence and the court's instructions, counsel made their closing arguments to the jury. The prosecutor made two erroneous statements regarding the law governing this case, and I conclude both of them constituted plain error.

¶ 69 First, he stated: "Ladies and gentlemen, this trial started and when it started, you were told that you have the presumption of innocence. *This presumption of innocence, after the evidence has come in, that cloak, the presumption of innocence is now gone.*" (Emphasis added.) This statement incorrectly recited the law regarding the presumption of innocence.

¶ 70 In *People v. McBride,* 228 P.3d 216, 223 (Colo.App.2009), the prosecutor told the jury, "[As defendant] sits here today, he sits here in front of you a guilty man. That presumption of innocence that we had when we started this case is gone." He told the jurors not to begin their deliberations at "not guilty" because, "You're about 10 miles from not guilty before you even start deliberating." *Id.* A division of this court disapproved these arguments because a defendant "retains a presumption of innocence *throughout the trial process*" and it is only discharged when the jury returns a guilty verdict. *Id.* at 223–34 (quoting *Martinez v. Court of Appeal,* 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000)). Thus, I agree with the majority's characterization of this statement as plain error.

¶ 71 However, I depart from the majority with respect to its analysis of the second alleged error. This occurred when the prosecutor in this case told the jury during closing argument that "there's not an affirmative defense in this case that applies." This

statement was inaccurate because the trial court had previously ruled that defendant was entitled to a self-defense instruction and had given the jury such an instruction.

¶ 72 It was undisputed that the incident arose from a confrontation that involved defendant, Briones, his brother, and two other men; that defendant was alleged to have pointed a gun at them; that the gun was not fired; and that defendant ran immediately to his own home. Thus, even if the jury found that defendant had used extremely poor judgment and had pointed a gun at the four men, it also could have found that defendant reasonably believed the other men were threatening him with physical violence and preventing him from safely leaving the Briones' home and that defendant used the degree of force *which he reasonably believed necessary* for the purpose of escaping the danger. *See* § 18-1-704(1), C.R.S.2011.

¶ 73 The court correctly instructed the jury that defendant was "not required to retreat in order to claim the right to employ force in his defense" and that his use of physical force was justifiable if "he [withdrew] from the encounter." Briones and his daughter both testified that, after their initial discussion with defendant outside the house, defendant left the Briones' yard just as Briones' brother was pulling up in his van, and the brother and his two co-workers got out.

¶ 74 Although the situation then became chaotic and heated, there nevertheless was evidence that defendant initially withdrew from the encounter. Hence, the jury could have found that defendant was trying to return home when Briones' brother arrived in his van and a confrontation occurred.

¶ 75 For these reasons, I conclude that the prosecutor's erroneous statement regarding the applicability of self-defense in this case constituted plain error and also resulted in substantial prejudice to defendant in presenting his defense. *See People v. Anderson*, 991 P.2d 319, 321 (Colo.App.1999) ("It is improper for counsel to misstate or misinterpret the law during closing argument.").

¶ 76 As a division of this court explained in *People v. Allee*, 77 P.3d 831, 835 (Colo.App.

2003), when discussing plain error, "[c]ontentions of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury."

¶ 77 Here, the jury instructions given by the trial court at the end of the case accurately recited the law regarding the presumption of innocence, the burden of proof, and the applicability of self-defense.

¶ 78 However, these instructions followed misleading and erroneous statements about core principles of law that were made by the court and the prosecutor at the beginning of the trial and were made again by the prosecutor at the conclusion of the trial.

¶ 79 I conclude these errors "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)). Accordingly, I would reverse defendant's convictions and remand the case for a new trial.