18CA1794 Peo v Archuleta 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA1794 El Paso County District Court No. 18CR435 Honorable Theresa M. Cisneros, Judge Honorable Daphne R. Burlingame, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jacob William Archuleta, Defendant-Appellant. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division III Opinion by JUDGE BROWN Furman and Lipinsky, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Jacob William Archuleta, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree aggravated motor vehicle theft. We affirm but remand the case to the district court to correct the mittimus to reflect that Archuleta pleaded not guilty and was tried by a jury. I. Background ¶ 2 When the victim left his 2000 GMC Yukon running unattended in his driveway in Colorado Springs, someone stole it. Police found the vehicle ten days after it was reported stolen, parked in front of a residence in Fountain. ¶ 3 Officers saw two people inside; one of them was later identified as Archuleta. Police placed spike sticks and stop sticks in front of and behind the vehicle’s tires. An officer then used the patrol car’s public address system to announce police presence. Officers observed movement inside the vehicle and then the vehicle drove away. ¶ 4 Police pursued the vehicle in a low speed chase but, because all four tires were punctured from the spike sticks, the vehicle eventually skidded off the road to a stop. Once the vehicle stopped, Archuleta exited from the driver’s side and the passenger exited 
2 from the passenger side. Both individuals ran from police but were apprehended. During the arrest, an officer found a syringe in Archuleta’s pocket. ¶ 5 The prosecution charged Archuleta with second degree aggravated motor vehicle theft, vehicular eluding, obstructing a peace officer, possession of drug paraphernalia, and possession of a defaced firearm. The jury convicted him of all charges except possession of a defaced firearm. ¶ 6 The district court sentenced Archuleta to ninety days in jail and three years of supervised probation through recovery court. After his probation was revoked, the court sentenced him to two years in prison. II. Analysis ¶ 7 Archuleta contends that (1) there was insufficient evidence to support his conviction for second degree aggravated motor vehicle theft; (2) the district court erred by not answering a jury question; and (3) the prosecutor engaged in misconduct during closing argument. We reject each of these contentions. However, we agree with Archuleta that the case must be remanded to correct the mittimus. 
3 A. Sufficiency of the Evidence 1. Standard of Review and Generally Applicable Law ¶ 8 “The Due Process Clauses of the Colorado and United States Constitutions require the prosecution to prove the existence of every element of a charged offense beyond a reasonable doubt.” People v. Espinoza, 195 P.3d 1122, 1127-28 (Colo. App. 2008). ¶ 9 We review de novo whether the evidence is sufficient to sustain a conviction. McCoy v. People, 2019 CO 44, ¶ 19. In doing so, we assess “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010) (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). And we give the prosecution the benefit of every inference that may reasonably be drawn from the evidence. People v. Carrasco, 85 P.3d 580, 582-83 (Colo. App. 2003). 
4 2. Knowingly Without Authorization ¶ 10 Archuleta contends that the prosecution failed to present sufficient evidence that he knew his control over the vehicle was without authorization. We are not persuaded. a. Applicable Law ¶ 11 As relevant here, a person commits second degree aggravated motor vehicle theft if they knowingly obtain or exercise control over the motor vehicle of another without authorization. § 18-4-409(4), C.R.S. 2020. The culpable mental state “knowingly” applies both to the defendant’s exercise of control over the vehicle and their awareness of their lack of authority. People v. Vialpando, 2020 COA 42, ¶ 21 (cert. granted Oct. 12, 2020). ¶ 12 At trial, direct evidence of a defendant’s culpable mental state is seldom available, see United States v. Johnson, 971 F.2d 562, 566 (10th Cir. 1992), so it often must be inferred from their actions and the surrounding circumstances, see Vialpando, ¶ 19. See also People v. Liggett, 114 P.3d 85, 90 (Colo. App. 2005) (“Proof of intent is often necessarily indirect, and the fact finder thus may ‘infer an intent to cause the natural and probable consequences of unlawful 
5 voluntary acts.’” (quoting People v. Fisher, 759 P.2d 33, 38 (Colo. 1988))), aff’d, 135 P.3d 725 (Colo. 2006). b. Application ¶ 13 At trial, the prosecution presented the following evidence relevant to whether Archuleta knew he lacked authorization from the vehicle’s owner to obtain or exercise control over the vehicle: • The vehicle owner testified unequivocally that he did not know Archuleta or give him permission to take the vehicle. • Officer Eric Moore testified that he was dispatched to a “suspicious incident” and located the vehicle, which had been reported stolen and bore license plates registered to a different vehicle. The officer testified that while he was attempting to contact the occupants of the residence where the vehicle was parked, other officers noticed that there were people sleeping in the vehicle. Officer Greg Morris testified that he observed Archuleta lying in the back seat of the vehicle. • The officers testified that they placed spike sticks and stop sticks around the vehicle, which would puncture the vehicle’s tires if it drove over them. They testified that 
6 police activated their lights and sirens and used the public address system on a patrol car to give verbal commands to the occupants of the vehicle. • Officer Moore told the jury that he heard the vehicle’s engine start, saw its brake lights turn on, and saw it drive away in an attempt to flee the scene. Because the vehicle drove over the spike sticks, its tires quickly deflated or blew out; the vehicle was driving on rims. In a low speed chase, Officer Moore pursued the vehicle with lights and sirens activated. Eventually, the driver lost control and the vehicle skidded off the road. Officer Morris similarly described the pursuit. • Officer Moore testified that, immediately after the vehicle came to a stop, a male occupant exited from the driver’s side and a female occupant exited from the passenger side. Both individuals fled on foot but were apprehended. Officer Moore identified Archuleta as the male occupant who fled from the driver’s side of the vehicle. • Officer Morris also testified that Archuleta exited from the driver’s side of the vehicle and fled on foot. The officer 
7 chased Archuleta and “gave loud verbal commands for him to stop running,” but Archuleta “didn’t listen and continued to run.” Ultimately, Officer Morris apprehended Archuleta. • The prosecution admitted body camera footage of the incident from each of the testifying officers. ¶ 14 In support of his argument that this evidence was insufficient to prove that he knew his control over the vehicle was without the owner’s authorization, Archuleta contends that the only evidence the prosecution presented at trial was that police officers found him sleeping in the stolen vehicle. He argues there was no evidence that he knew the vehicle was stolen and the prosecution’s evidence did not rule out that he believed the vehicle had been abandoned or that someone else gave him authorization to use it. ¶ 15 As an initial matter, although the motor vehicle theft statute does not expressly identify whose “authorization” must be given, see § 18-4-409(4), Archuleta argues that the prosecution was required to show that he knew his control over the vehicle was without the owner’s authorization. See People v. Stellabotte, 2016 COA 106, ¶ 26, aff’d, 2018 CO 66. So, based on Archuleta’s own argument, 
8 evidence that someone other than the owner of the vehicle authorized him to use it would have been irrelevant. ¶ 16 As noted, a defendant’s culpable mental state rarely can be proven by direct evidence; it must frequently be inferred from the defendant’s conduct and the surrounding circumstances. See Vialpando, ¶ 19; Liggett, 114 P.3d at90. Further, given that the prosecution could not force Archuleta to testify, it could only prove his mental state by circumstantial evidence. As the Colorado Supreme Court explained in Garcia v. People, [w]e have consistently upheld the right of the trier of the fact to draw inferences of guilt on the basis of circumstantial evidence. The defendant’s right to remain silent places the burden on the People to prove the case against him by evidence other than his account of the transaction in question. But the privilege against self-incrimination in no way limits the right of the trier of the fact to draw reasonable inferences from the People’s evidence. ¶ 17 172 Colo. 329, 332, 473 P.2d 169, 170-71 (1970) (citation omitted). ¶ 18 Here, the prosecution presented evidence that the owner of the vehicle did not authorize Archuleta to exercise control over the vehicle. It also presented evidence that Archuleta fled the scene — 
9 both in the stolen vehicle and on foot once the vehicle became inoperable. Although we acknowledge that there could be other reasons why Archuleta fled, that does not mean it would be unreasonable for a juror to infer that Archuleta was aware that he lacked authority to exercise control over the vehicle when he drove away from the police, crashed the car, and then continued running on foot. See Vialpando, ¶ 29 (concluding that a reasonable juror could infer that defendant was aware she lacked authority to exercise control over the car when she knew police were seeking her, drove away from the motel, and crashed the car); see also Whaley v. People, 171 Colo. 287, 292, 466 P.2d 927, 929 (1970) (concluding that the jury was justified in inferring defendant’s knowledge that goods were stolen from the circumstantial evidence and that, in the absence of testimony or evidence offered by the defendant or anyone else in his behalf, the defendant was “in no position to complain because the jury drew inferences which were unfavorable to him but nonetheless were warranted by the evidence”). ¶ 19 When viewed as a whole and in the light most favorable to the prosecution, the evidence was substantial and sufficient to support 
10 a conclusion by a reasonable juror that Archuleta was guilty of second degree aggravated motor vehicle theft beyond a reasonable doubt. 3. Vehicle Value ¶ 20 Second degree aggravated motor vehicle theft is a class 6 felony if the vehicle is worth at least $1,000 but not more than $20,000. § 18-4-409(4)(b). Archuleta contends that the prosecution did not prove beyond a reasonable doubt that the vehicle was worth at least $1,000, so his conviction should be reduced to a class 1 misdemeanor. § 18-4-409(4)(c). We disagree. a. Applicable Law ¶ 21 A jury does not need to find the precise value of a stolen vehicle. People v. Anders, 38 Colo. App. 185, 189, 559 P.2d 239, 242 (1976). But “[w]here the value of the goods stolen determines the grade of the offense, there must be some basis other than pure speculation for determination of the real value.” People v. A.G., 43 Colo. App. 514, 516, 605 P.2d 487, 489 (1979). Indeed, the prosecution has the burden to “present competent evidence of the reasonable market value of the item at the time of the commission of the alleged offense.” People v. Jaeb, 2018 COA 179, ¶ 40. 
11 Market value is what a willing buyer would pay and a willing seller would accept for the stolen items. People v. Vigil, 2015 COA 88M, ¶ 80, aff’d, 2019 CO 105. In determining a vehicle’s market value, a jury may consider the use of the vehicle and use its common knowledge. See People v. Early, 692 P.2d 1116, 1120 (Colo. App. 1984). b. Application ¶ 22 At trial, the prosecution presented the following evidence relevant to the value of the stolen vehicle: • The vehicle’s owner testified that he bought the 2000 GMC Yukon used in 2005 — thirteen years before it was stolen — for $13,000. • The prosecution admitted Exhibit 13, the vehicle registration, which listed the purchase price as $13,000. • The owner told the jury that, since purchasing the vehicle, he had kept it in good working order. He acknowledged, however, that the vehicle leaked a quart of oil every two weeks and that it had been driven over 230,000 miles. • The owner testified that the vehicle was the “XL version” with heated leather seats, cruise control, wheel tilt, AM/FM 
12 cassette and CD player, four-wheel drive, and “all the bells and whistles.” • The owner testified that, shortly before the vehicle was stolen, he paid $600 for repairs and purchased tires for it that cost $120. ¶ 23 Archuleta contends that this evidence was insufficient for a reasonable juror to conclude that the vehicle was worth at least $1,000. He argues that there was no direct evidence of value, highlighting the fact that the owner did not testify to the vehicle’s current value; instead, the owner testified to the purchase price from approximately thirteen years earlier. Archuleta further argues that the circumstantial evidence should have left any reasonable juror with reasonable doubt that the vehicle was worth $1,000 or more. ¶ 24 In support of his argument, Archuleta relies on Vigil, ¶¶ 81-83, in which a division of this court called it “a close question” whether the prosecution presented sufficient evidence of the value of a stolen vehicle where the owner testified he “would give a thousand dollars for it.” Ultimately, the division concluded that the evidence 
13 was sufficient. Id. at ¶ 83. Archuleta argues that the prosecution presented even less evidence in this case. ¶ 25 An owner of goods is always competent to testify to the value of their property. People v. Paris, 182 Colo. 148, 151, 511 P.2d 893, 894 (1973). However, an owner’s testimony as to a vehicle’s purchase price is competent evidence of market value only where the item is so new and has depreciated so insubstantially as to allow a reasonable inference that the purchase price is comparable to the current market value. Id. ¶ 26 So we agree with Archuleta that the owner’s testimony as to the stale purchase price of the vehicle, standing alone, would not have been sufficient for the jury to reasonably conclude that its current market value was equal to or greater than $1,000. But there was other circumstantial evidence of value from which the jury reasonably could reach that conclusion. Specifically, the owner testified that he recently invested $720 for repairs and tires and explained the upgraded features of the vehicle. Cf. People v. Jamison, 220 P.3d 992, 995 (Colo. App. 2009) (rejecting the People’s argument that the “items themselves” could be considered some evidence of their value but noting that “no evidence was presented 
14 in this case as to the condition, age, and other factors which the jury could consider in determining value”). ¶ 27 Giving the prosecution the benefit of every reasonable inference that may be drawn from the evidence, Carrasco, 85 P.3d at 582-83, we conclude that the totality of the evidence of the vehicle’s age, make, model, size, features, condition, and cost of recent repairs and updates, see id. — particularly when combined with the jury’s use of its common knowledge, see Early, 692 P.2d at 1120 — was substantial and sufficient to support a conclusion by a reasonable juror that the stolen vehicle was worth at least $1,000. B. Jury Question ¶ 28 Archuleta contends that the district court erred by not answering a jury question seeking clarification on the “without authorization” element of second degree aggravated motor vehicle theft. We perceive no plain error. 1. Standard of Review and Applicable Law ¶ 29 We review jury instructions de novo to determine if they correctly informed the jury of the applicable law. People v. Luna, 2020 COA 123M, ¶ 8. The trial court has substantial discretion in formulating the jury instructions so long as the instructions are 
15 correct statements of the law and fairly and adequately cover the issues presented. People v. Pahl, 169 P.3d 169, 183 (Colo. App. 2006). And whether to provide the jury with additional instructions in response to a juror question is a determination within the trial court’s sound discretion. People v. Bass, 155 P.3d 547, 552 (Colo. App. 2006). ¶ 30 Absent evidence to the contrary, a jury is presumed to understand and follow the trial court’s instructions. Leonardo v. People, 728 P.2d 1252, 1256 (Colo. 1986). This presumption may be overcome “when the jury indicates to the judge that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused.” Id. at 1256. On receipt of a jury’s question regarding a point of law, a court should give further instructions to the jury unless the question can be answered by the instructions already given, is not relevant to the law at issue, or asks the court to decide issues of fact. People v. Chase, 2013 COA 27, ¶ 38. ¶ 31 Because Archuleta’s contention is unpreserved, we review for plain error and reverse only if the error was obvious and so undermined the fundamental fairness of the trial as to cast serious 
16 doubt on the reliability of the judgment of conviction. Hagos v. People, 2012 CO 63, ¶ 14. To be obvious, the error ordinarily must contravene a clear statutory command, a well-settled legal principle, or Colorado case law. People v. Conyac, 2014 COA 8M, ¶ 143. Under plain error review as applied to jury instructions, the defendant must demonstrate that the error affected a substantial right and that the record reveals a reasonable possibility that it contributed to the conviction. People v. Miller, 113 P.3d 743, 750 (Colo. 2005). 2. Additional Background ¶ 32 The district court gave the jury Instruction Number 14 which set forth the elements of second degree aggravated motor vehicle theft: 1. That the defendant, 2. in the State of Colorado, at or about the date and place charged, 3. knowingly, 4. obtained or exercised control over the motor vehicle of another, 5. without authorization, or by threat or deception. ¶ 33 During deliberations, the jury submitted a written question to the court which said, “For Instruction No. 14 is line 5 ‘without 
17 authorization’ referring to authorization only from the direct owner of the vehicle[?]” The trial court replied, “In response to your question . . . you are instructed to consider the instructions together as a whole.” 3. Application ¶ 34 Archuleta contends that the district court erred by directing the jury back to the existing instructions. He argues that the court should have answered the jury’s question “yes” because a defendant must know that his possession or control of the vehicle was without authorization of the owner. See Stellabotte, ¶ 26. ¶ 35 Even assuming the district court’s response to the jury’s question was obviously erroneous, however, there is no reasonable possibility that it contributed to Archuleta’s conviction. Any jury confusion inured to Archuleta’s benefit because it allowed the jury to believe either (1) that the authorization in question must be from the vehicle’s owner, which is what Archuleta argues would have been the correct answer to the jury question; or (2) that someone else could have authorized Archuleta’s control of the vehicle, which would have supported his theory of defense. 
18 ¶ 36 Indeed, beginning with opening statement, Archuleta’s attorney told the jury that the evidence of Archuleta’s knowledge was insufficient because he did not know the car was stolen. Any confusion on the jury’s part about whether the owner alone had to authorize Archuleta’s possession, or whether someone else could have authorized it, only bolstered his defense. ¶ 37 Under these circumstances, we conclude that any error by the district court in not answering the jury’s question did not affect a substantial right and that there is not a reasonable possibility that it contributed to Archuleta’s conviction. Miller, 113 P.3d at 750. We discern no plain error. C. Prosecutorial Misconduct ¶ 38 Archuleta contends that the prosecution engaged in reversible misconduct when the prosecutor misstated the mens rea requirement for second degree aggravated motor vehicle theft, thereby reducing the prosecution’s burden of proof. We disagree. 1. Applicable Law and Standard of Review ¶ 39 We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor’s conduct 
19 was improper based on the totality of the circumstances. Id. Second, we decide whether such actions warrant reversal under the proper standard of review. Id. ¶ 40 Where, as here, there is no contemporaneous objection, we review the alleged misconduct for plain error. People v. Rhea, 2014 COA 60, ¶ 43. “To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.” People v. McMinn, 2013 COA 94, ¶ 58. Prosecutorial misconduct in closing argument rarely constitutes plain error. People v. Estes, 2012 COA 41, ¶ 19; People v. Strock, 252 P.3d 1148, 1152-53 (Colo. App. 2010). 2. Additional Background ¶ 41 During her closing argument, the prosecutor explained what was required to prove second degree aggravated motor vehicle theft: Now, this is charged as aggravated motor vehicle theft in the second degree. And why is that important? We got a juror question to [the vehicle owner], and the question was about whether or not he had seen anything funny happening. 
20 This is not aggravated motor vehicle [theft] in the first degree. We are not proving that [Archuleta] stole the car right from [the owner’s] driveway. That is not what we are here for. This is second degree motor vehicle theft. And all we have to prove is that he obtained or executed control. Obtained or executed control. Whenever you see an “or” when you go back there and you are looking through these, that means we have to prove one or the other. So did he exercise control over that vehicle? Sure. He was sleeping in it. And if sleeping in it isn’t enough for you, he drove the car. So he absolutely exercised control. Over the motor vehicle of another. You know that it was another’s motor vehicle. You heard right from [the owner]. We also brought in the registration. You see owner name . . . right there. And we have proven that element beyond a reasonable doubt. Without authorization or by threat or deception. We only have to prove one, and what we are proving is without authorization. Everybody remembers [the owner], right? He was a character. And he sat right there, and I asked him if he knew [Archuleta], if he had ever met him. He said no. Did you give him authorization to be in your car or take your car? No. So he did not have authorization to be in [the owner’s] car. And we have proven that beyond a reasonable doubt. 
21 ¶ 42 During her closing argument, addressing the “obtains or exercises control” element of second degree aggravated motor vehicle theft, defense counsel argued, As for whether or not Mr. Archuleta actually stole the vehicle. So the district attorney is right, there [are] two ways that they could prove this. One is that he obtained control over the motor vehicle; that he stole it. And again, think of the investigation that could have been done to exonerate [Archuleta] of this. ¶ 43 Defense counsel then highlighted the deficiencies in the police investigation and the fact that police did not identify who stole the vehicle from the victim’s driveway. The clear implication from defense counsel’s argument was that Archuleta was not guilty because the prosecution had not proved that he was the person who stole the vehicle in the first instance. ¶ 44 Defense counsel continued, The other way the district attorney can prove this charge is if they show that he exercised control. . . . So they have to prove that [Archuleta] knowingly obtained or exercised control over it, and that he did so knowing that he didn’t have authorization or that he knew it was by threat or deception. 
22 So yes, he exercised control over it. He was in possession of a stolen vehicle. But he didn’t know that it was stolen. ¶ 45 Then, during rebuttal closing, the prosecutor argued that second degree aggravated motor vehicle theft did not require proof that Archuleta had stolen the vehicle, only that he controlled it without authorization: It doesn’t matter who stole the car because that is not what he is charged with. I am asking you to read those instructions carefully. Did he knowingly exercise control over a vehicle that was not his? Absolutely. That is all second degree motor vehicle theft is. 3. Application ¶ 46 As noted and as relevant here, a person commits second degree aggravated motor vehicle theft if they knowingly obtain or exercise control over the motor vehicle of another without authorization. § 18-4-409(4). ¶ 47 Archuleta contends that the prosecutor misstated the law by telling the jury that the crime of second degree aggravated motor vehicle theft required only that Archuleta knowingly exercised control over a vehicle that was not his. According to Archuleta, the prosecutor failed to tell the jury that the prosecution must also 
23 prove that Archuleta knew his exercise of control over the vehicle was without the owner’s authorization. By omitting an element, Archuleta argues, the prosecutor lowered the prosecution’s burden of proof. ¶ 48 When the prosecutor’s statement is read in the context of the overall closing argument, however, she did not tell the jury that the prosecution only had to prove that Archuleta knowingly exercised control over a vehicle that did not belong to him to convict him of second degree aggravated motor vehicle theft. Nor did she tell the jury that the mens rea element — knowledge — did not apply to the “without authorization” element. Instead, the prosecutor appeared to be responding to defense counsel’s argument that Archuleta was not guilty because the prosecution did not prove that he stole the vehicle from the owner’s driveway. A prosecutor is entitled to respond to defense counsel’s argument. See People v. Wilson, 2014 COA 114, ¶ 69. And to be sure, the prosecutor discussed all elements of the crime in her initial closing argument. ¶ 49 In context, and although inartful, the prosecutor’s statement during rebuttal closing was not “flagrant or glaringly or tremendously improper” such that it undermined the fundamental 
24 fairness of the trial or cast serious doubt on the reliability of Archuleta’s conviction. See McMinn, ¶ 58; People v. McBride, 228 P.3d 216, 221 (Colo. App. 2009) (explaining that because arguments are delivered in the heat of trial, we afford prosecutors the benefit of the doubt when their remarks are ambiguous or inartful). We perceive no plain error. D. Mittimus Correction ¶ 50 We agree with both parties that we must remand the case to the district court to correct the mittimus. The mittimus states that Archuleta pleaded guilty, but he pleaded not guilty and was convicted after a jury trial. So we remand and instruct the district court to correct the mittimus accordingly. See People v. Mintz, 165 P.3d 829, 836 (Colo. App. 2007). III. Conclusion ¶ 51 We remand the case to the district court to correct the mittimus. Otherwise we affirm the judgment of conviction. JUDGE FURMAN and JUDGE LIPINSKY concur.