22CA2106 Peo v Kolacny 06-05-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 22CA2106
Douglas County District Court No. 21CR841
Honorable Theresa Slade, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Corey Neil Kolacny,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

_____

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Corey Neil Kolacny, appeals the conviction entered on jury verdicts finding him guilty of felony menacing, criminal mischief, prohibited use of a weapon, violation of a protection order, and two counts of possession of a weapon by a previous offender. We affirm Kolacny's judgment of conviction but reverse the court's order imposing surcharges, costs, and fees, and we remand for amendment of the mittimus.

## I.     Background

¶ 2     The prosecution charged Kolacny with the above offenses. During a bifurcated trial in which the felony menacing, criminal mischief, and prohibited use of a weapon charges were tried first, the prosecution presented the following evidence.

¶ 3     Wil Lowery and Shannon Ball were in Lowery's car, parked in a public, on-street parking spot in Castle Rock, when they heard a loud noise at approximately 10 p.m. Lowery thought someone had thrown a rock at his car, so he got out to assess and discovered his car had been damaged. While looking around to see who or what might have caused the damage, he saw a nearby house. Although Lowery said it was "pitch black," he saw someone he described as a white adult male wearing a lighter colored shirt move in the dark.

¶ 4    Lowery asked the person why he threw rocks at his car, and the person responded that Lowery was on private property.  As Lowery continued to ask about the damage to his car, the person responded, "[If] you step one foot closer, I'm going to blow it."  Lowery did not see a weapon, but he heard a gunshot and saw a flash and smoke rising from what he believed to be the muzzle of a firearm.  Lowery and Ball immediately drove away and later called the police.

¶ 5    Officer Robert Schuster responded to the scene of the incident.  After confirming that Lowery had been parked in a public parking space, he saw a person — later identified as Kolacny — leave a nearby residence and stand behind a truck parked in the residence's driveway.

¶ 6    Officers detained Kolacny, interviewed him, and conducted a protective sweep of his residence.  Kolacny told investigating officers that he was playing video games and watching television when he heard a car backfire.  Kolacny denied having a firearm, firing a gun on the night of the incident, or being otherwise involved with the shooting.  Following the protective sweep, Officer Schuster found a spent .45 caliber shell casing in the driveway and a slingshot in the

bed of the truck. Kolacny authorized officers to search his residence, and Officer Schuster found a "Walther-labeled handgun" (Walther gun) in a closet next to the front door and ten rounds of rifle ammunition elsewhere in the home. Officers also found an unspent .45 caliber bullet and "tactile gloves" in Kolacny's home, and, during a pat down search, they found three "nickel-sized rocks" in Kolacny's front pants pocket. Samples taken from Kolacny's hands and forearms that night later tested positive for gunshot residue.

¶ 7 During their investigation, officers asked Kolacny whether he had information about a neighboring home that was similar in appearance to Kolacny's home. The officers learned that the neighboring home belonged to Kolacny's grandfather. Officers testified that Kolacny informed them that he didn't have access to his grandfather's home, the home was locked, and his grandfather wasn't there. Officers obtained a warrant to search Kolacny's grandfather's home several hours into their investigation. An officer testified that, while the police waited for the search warrant, he didn't see anyone in the area besides Kolacny, and he didn't see anyone enter or exit Kolacny's grandfather's home. After obtaining

3

the search warrant for the grandfather's home, officers entered through the back door, which they discovered was neither locked nor latched. Inside, officers found a magazine loaded with .45 caliber bullets and a "Taurus 911" .45 caliber handgun (Taurus gun).

¶ 8 The trial was bifurcated so that the jury wouldn't hear about Kolacny's prior offenses — an element of the possession of a weapon by a previous offender charge — before it considered the felony menacing, criminal mischief, and prohibited use of a weapon charges during the first portion of the trial. After the second portion of the trial, the jury convicted Kolacny as charged.

¶ 9 On appeal, Kolacny contends that the trial court erred by admitting irrelevant and unduly prejudicial firearms evidence and by admitting hearsay testimony regarding the cost of the damage to Lowery's car. He also contends that the prosecutor committed misconduct during opening statements and closing argument. Finally, he contends that the trial court erred by imposing surcharges, costs, and fees without allowing him to request a waiver based on his indigency.

¶ 10      We address each contention in turn.  We affirm the judgment of conviction on all counts but reverse the court's imposition of surcharges, costs, and fees and remand for correction of the mittimus.

## II.     Firearm Paraphernalia Evidence

¶ 11      Kolacny contends that the district court erred by admitting evidence of the Walther gun, rifle ammunition, and tactile gloves (collectively, firearms paraphernalia) because such evidence was irrelevant and unduly prejudicial.  We agree that the court erred by admitting the firearms paraphernalia but conclude that any error was harmless.

### A.     Additional Facts

¶ 12      The morning of trial, defense counsel notified the court that they[1] were objecting to the admission of evidence of the Walther gun.  Defense counsel asserted the Walther gun was not a firearm capable of shooting a projectile; rather, the Taurus gun was the "operable" firearm that the prosecution theorized Kolacny fired from the driveway.  Thus, defense counsel argued that evidence of the

---

[1] Kolacny was represented by two public defenders during the trial.

Walther gun was irrelevant and unfairly prejudicial. The prosecution disagreed, asserting that the Walther gun was relevant to the jury's consideration of (1) Kolacny's "bias and credibility," based on statements he made to officers the night of the incident; and (2) the thoroughness of law enforcement's investigation because it demonstrated officers had considered but ruled out the Walther gun as the weapon that was used in the incident.

¶ 13 Defense counsel also asserted that the rifle ammunition was not relevant to the menacing charge because it was "not related to the weapon that was fired." As with the Walther gun, the prosecution responded that the ammunition was relevant to Kolacny's bias and credibility and to whether law enforcement had conducted a thorough investigation. The trial court determined it didn't yet have enough information to rule on the admissibility of either piece of evidence.

¶ 14 Kolacny's defense at trial was mistaken identity. During opening statements, Kolacny's counsel argued that the investigating officers had failed to take "a lot of things into consideration" and prematurely "arrested their only suspect" — Kolacny — who counsel asserted was the wrong person. During trial, defense counsel

renewed the objection to the admission of evidence of the Walther gun because it was a starter pistol[2] incapable of firing bullets. In response, the prosecution alleged that defense counsel had opened the door to the evidence's admission by asserting the officers had not conducted a thorough investigation. Additionally, the prosecution disputed defense counsel's assertion that the Walther gun was inoperable, arguing that a detective assigned to the case indicated the Walther gun was capable of firing a live round and should be considered a weapon. The court again determined it didn't have enough information to rule.

¶ 15    During his trial testimony, Officer Schuster said that he routinely collects exculpatory and inculpatory evidence from crime scenes to have a "full picture of the investigation." When he entered Kolacny's residence, he was looking for "anything related to . . . the initial report that rocks had been thrown . . . or anything related to a firearm." He thus documented the Walther gun and the rifle

---

[2] Starter pistols' barrels are specifically designed to fire only blank cartridges and are most commonly used in track and field competitions to signal the start of events and in special effects to simulate the firing of gunshots. *See* Merriam-Webster Dictionary, https://perma.cc/Y368-8ZNA.

ammunition because anytime officers investigate a scene with a report of "shots fired . . . , anything that could be related to a shooting is important." Similarly, another officer testified that he made note of the "tactile gloves" because "[p]eople sometimes use those when they fire weapons."

¶ 16 On cross-examination, Officer Schuster acknowledged that there was no ammunition in the Walther gun when he found it. He also acknowledged that it wouldn't have been capable of shooting a .45 caliber bullet. Additionally, Corporal Daniel Moffit, another responding officer, testified he observed that the barrel channel of the Walther gun had been sealed with filler, rendering it permanently inoperable.

### B. Standard of Review and Preservation

¶ 17 We review a trial court's evidentiary rulings for an abuse of discretion. *Gonzales v. People*, 2020 CO 71, ¶ 25. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous understanding of the law. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).

¶ 18 We apply the harmless error standard to preserved claims of error and reverse only for errors that "substantially influenced the

verdict or affected the fairness of the trial proceedings." *Hagos v. People*, 2012 CO 63, ¶ 12 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 19     We reverse unpreserved claims for plain error. *Id.* at ¶ 14. Plain errors are "obvious" and "substantial." *Id.* A "plain error" is an error so obvious that a trial judge should be able to avoid it without an objection. *Scott v. People,* 2017 CO 16, ¶ 16. An obvious error is ordinarily one that contravenes (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law. *Id.* An error must be "seriously prejudicial" to be considered substantial; that is, the error must have so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the defendant's conviction. *People v. Ujaama*, 2012 COA 36, ¶ 43; *see Hagos*, ¶ 14.

¶ 20     Kolacny objected to the admission of evidence of the Walther gun on the basis that it was irrelevant and that "it would confuse the jury and be prejudicial to [him]." He also objected to the rifle ammunition's admission on relevance grounds. Therefore, we review these contentions for harmless error.

¶ 21    However, we review for plain error Kolacny's contention that the rifle ammunition evidence was unduly prejudicial because he didn't contemporaneously object to its admission on that basis.[3] We likewise review for plain error Kolacny's contention that the testimony about the tactile gloves was irrelevant and unduly prejudicial because Kolacny didn't raise any objection to that testimony.

## C.    Applicable Law

¶ 22    Evidence must be relevant under CRE 401 and not unfairly prejudicial under CRE 403 to be admissible.  *People v Greenlee*, 200 P.3d 363, 366 (Colo. 2009), *abrogated on other grounds by Rojas v. People*, 2022 CO 8.  Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable. CRE 401.  "Relevant evidence 'need not prove conclusively the proposition for which it is offered, . . . but it must in some degree

---

[3] Kolacny's opening brief refers to the firearms paraphernalia evidence collectively and argues that the court's admission of that evidence was "irrelevant and prejudicial."  However, his objection at trial focused on whether the evidence was irrelevant and, therefore, inadmissible under CRE 402.  Kolacny acknowledges that he didn't argue during trial, as he does here, that the rifle ammunition was inadmissible under CRE 403 because any relevant probative value was substantially outweighed by unfair prejudice.

advance the inquiry.'" *Greenlee*, 200 P.3d at 366 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401.04[2][b] (Joseph M. McLaughlin ed., 2d ed. 2008)).

¶ 23　While relevant evidence is generally admissible, *see* CRE 402, CRE 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Because CRE 403 strongly favors admissibility, on review, we afford the evidence its maximum probative value and the minimum reasonably expected unfair prejudice. *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

¶ 24　Under the version of the statute in effect at the time of the incident, a person commits felony menacing if

> by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury . . . [b]y the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon.

§ 18-3-206(1)(a), C.R.S. 2021.

¶ 25　A "[d]eadly weapon" includes "[a] firearm, whether loaded or unloaded . . . that, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury."

11

§ 18-1-901(2)(e)(I)-(II), C.R.S. 2024. And a "[f]irearm" is "any handgun, automatic, revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges." § 18-1-901(3)(h).

¶ 26     Under the applicable version of the prohibited use of a weapon statute, a person commits a crime by discharging a firearm "[r]ecklessly or with criminal negligence." § 18-12-106(1)(b), C.R.S. 2021.

### D.     Analysis

#### 1.     Walther Gun

¶ 27     The prosecution asserts that evidence of the Walther gun was relevant to Kolacny's credibility because the officers' discovery of it made it more probable that Kolacny wasn't truthful when he told them that he hadn't possessed any firearms the night of the incident. We disagree.

¶ 28     As captured in bodycam footage, Kolacny stated that he wasn't in possession of any guns on the night of the incident. But he didn't testify at trial. *See People v. Segovia*, 196 P.3d 1126, 1130 (Colo. 2008) ("If a witness takes the stand and testifies, [he] puts

[his] credibility in issue. Thus, the opposing party is entitled to impeach the witness's credibility.") (citation omitted). Therefore, the prosecution couldn't use the Walther gun as extrinsic evidence to challenge the credibility of Kolacny's pretrial statements. *See* CRE 608(b) (noting that, generally, extrinsic evidence of specific instances of a witness's conduct can't be used to attack or support the witness's character for truthfulness); *see also People v. Thomas*, 2014 COA 64, ¶ 42 (explaining that CRE 608(b) doesn't prevent admission of extrinsic evidence that *specifically contradicts defendant's direct testimony*). Accordingly, evidence of the Walther gun was not relevant to Kolacny's credibility.

¶ 29    Moreover, prosecution witnesses testified that the Walther gun was inoperable and incapable of firing .45 caliber — or any other caliber — ammunition. Thus, the admission of evidence of the Walther gun didn't advance the jury's inquiry into whether Kolacny had committed the offenses of menacing and prohibited use of a weapon because those offenses were based on allegations that an unknown person fired an unseen weapon into the air.

¶ 30    And we disagree with the People's assertion that, regardless of the Walther gun's operability, it was relevant to rebut defense

13

counsel's assertion that law enforcement hadn't conducted a thorough investigation. While "evidence may be independently relevant to show that police conducted a thorough investigation," *People v. Marks,* 2015 COA 173, ¶ 34, defense counsel didn't argue that the officers hadn't thoroughly investigated Kolacny; she argued that law enforcement hadn't investigated anyone else. Therefore, the Walther gun evidence could not logically advance the jury's determination of whether law enforcement had investigated anyone *other than* Kolacny.

¶ 31     Nonetheless, we conclude that the court's error in admitting evidence of the Walther gun was harmless. The prosecution produced evidence at trial that, immediately following the incident, Kolacny was the only individual observed in the area for several hours while officers waited for a warrant to search the grandfather's house. It also produced a spent .45 caliber shell casing recovered from the driveway of Kolacny's home, which was immediately next door to his grandfather's house, and elicited testimony confirming that officers were able to enter the grandfather's home through an unlocked door after obtaining the warrant; that officers recovered the .45 caliber Taurus gun and .45 caliber magazine from the

grandfather's home; and that Kolacny's hands and forearms later tested positive for gunshot residue.

¶ 32    And the jury — as evidenced by the substance of the jury questions it submitted to the court during trial — carefully evaluated the evidence presented to it.  Contrary to Kolacny's assertion that the jurors' extensive questions show "confusion" and "distraction caused by the admission of the firearms paraphernalia," the record reflects that the jurors asked questions throughout the trial.  For example, the jury asked questions about, among other things, Lowery's and Ball's actions and observations, the distance between Kolacny's home and Lowery's car, the location of Kolacny's home relative to his grandfather's home, whether there were fingerprints on the .45 spent shell casing from Kolacny's driveway, whether Kolacny's hands were tested for gunshot residue, and whether the spent shell casing matched the type of ammunition found in the Taurus gun's magazine.  And while the jurors asked a few questions related to the Walther gun, they weren't fixated on it.

¶ 33    Thus, considering the entirety of the record, we can't conclude that the court's erroneous admission of evidence of the Walther gun substantially impacted the verdict or affected the fairness of the

trial. *See Masters v. People*, 58 P.3d 979, 1002-03 (Colo. 2002) ("If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless." (quoting *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989))).

## 2. Rifle Ammunition

¶ 34    Kolacny asserts that the rifle ammunition was irrelevant — and the court's admission of it was therefore erroneous — because (1) there was no evidence that a rifle was involved in menacing the victims; (2) the rifle ammunition was too large to fit in either the Walther or the Taurus guns; and (3) neither the spent shell casing found in Kolacny's driveway nor the unfired live round inside the Taurus gun was a rifle cartridge.  We agree.

¶ 35    The People admit that the rifle ammunition couldn't be fired from either the Walther gun or the Taurus gun.  And we reject the People's argument that the ammunition was relevant to challenge Kolacny's truthfulness because, as we've already concluded, the prosecution couldn't use extrinsic evidence to challenge Kolacny's credibility.

16

¶ 36     We likewise reject the People's argument that admission of the ammunition was relevant to the jury's determination of the menacing charge, for two reasons.  First, because the rifle ammunition alone couldn't satisfy the definition of "[f]irearm," § 18-1-901(3)(h), its admission couldn't assist the jury in determining whether Kolacny had menaced the victims by using a deadly weapon.  Second, because Lowery didn't see the item that caused the damage to his car or produced the flash and smoke that he believed came from a firearm, we reject the assertion that the rifle ammunition was probative of the jury's determination of whether Kolacny had used "any article," § 18-3-206(1)(a), C.R.S. 2021, in a manner that caused the victims' to reasonably believe that a deadly weapon was involved.  *See People v. Carlson*, 712 P.2d 1018, 1022 (Colo. 1986) ("In determining whether the challenged evidence relates to a fact of consequence to the determination of this case, we must necessarily look to the elements of the crime[s] charged.").  Thus, the rifle ammunition was irrelevant, and the court erred by admitting it.

¶ 37     Regardless, we conclude the court's error — even if obvious — did not substantially affect the fundamental fairness of the trial so

as to cast serious doubt on the reliability of the judgment of conviction.

¶ 38    Our review of the record doesn't indicate that the jury was unduly focused on the rifle ammunition.  While the jury asked numerous questions during the trial, it asked only two questions related to the ammunition: whether a rifle was found in Kolacny's residence and whether the rifle ammunition was pictured in one of the prosecution's admitted exhibits.  Thus, we conclude that the court's erroneous admission of the rifle ammunition didn't substantially influence the verdict, impact the fundamental fairness of the trial, or cast serious doubt on the reliability of Kolacny's conviction.

### 3.    Tactile Gloves

¶ 39    Kolacny argues that evidence about the tactile gloves was irrelevant because the prosecution presented no evidence Kolacny wore the gloves the night of the incident or that the gloves were otherwise involved.  We agree.

¶ 40    At trial, while officers testified that tactile gloves *may* indicate that a person uses firearms, the presence of the tactile gloves in Kolacny's residence — without more — didn't help the jury

determine at any fact at issue, such as the identity of the shooter or the type of weapon fired.

¶ 41 Nonetheless, we conclude the court didn't plainly err by admitting evidence about the tactile gloves. The testimony about the tactile gloves was limited. And in closing argument, the prosecution did not emphasize the gloves as key evidence supporting any of the charges. Accordingly, we conclude the limited references to the tactile gloves weren't so prejudicial as to cause us to seriously doubt the reliability of Kolacny's conviction. *See People v. Lahr*, 2013 COA 57, ¶ 24 ("[A]ll inadmissible evidence is not equally prejudicial," and on review, we may deem inadmissible evidence to have less prejudicial impact when it is only minimally referenced.).

III.   Hearsay Testimony

¶ 42 Kolacny contends that the trial court reversibly erred by admitting hearsay testimony about the cost of the damage to Lowery's car. We disagree.

A.   Additional Facts

¶ 43 During direct examination, Lowery testified that he had owned his car — an Audi A4 — for four to five months before the incident.

19

He also said that he was "really into cars," and that he knew his car had no previous damage because he looked at it frequently. When the prosecutor asked Lowery to estimate the cost of the damage to his car, Lowery said that he believed it amounted to about $2,000. Defense counsel objected to Lowery's testimony, arguing Lowery was "getting into [hearsay] in regards to an estimation." The court overruled the objection, noting that Lowery could testify to the value of the damage to his car to the extent that he knew the value. The court further noted, "If it comes to an exact estimate or exact damages, that's a different topic."

¶ 44 The prosecutor then asked Lowery if he had sought information about what it would cost to fix his car and, if so, whether that information changed his estimate of the value of the damage to the car. Lowery responded that he had and that his estimation of the damage to his car "was very similar to what [he] was quoted."

¶ 45 During closing argument, the prosecutor referenced Lowery's estimate of the cost of repairing his car stating, "[H]e told you that he got an estimate . . . that can confirm that amount."

## B. Standard of Review and Preservation

¶ 46    We review a court's admission of hearsay evidence for an abuse of discretion. *People v. Valles*, 2013 COA 84, ¶ 53. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or based on an erroneous understanding of the law. *Yusem*, 210 P.3d at 463.

¶ 47    As an initial matter, the parties dispute whether Kolacny preserved this issue for review. Because Kolacny objected to the testimony as improper hearsay, we conclude that the issue was sufficiently preserved.

## C. Applicable Law

¶ 48    Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay statements are generally inadmissible unless an exception applies. CRE 802.

¶ 49    A person commits criminal mischief when he or she knowingly damages another person's real or personal property. § 18-4-501(1), C.R.S. 2024. The damage element reflects the economic loss to the victim, in terms of actual value, which is generally determined by market value. *People v. Dunoyair*, 660 P.2d 890, 894-95 (Colo.

1983). In criminal mischief cases, "the value of the damage may be determined by the costs of repair and replacement," *People v Waters*, 641 P.2d 292, 294 (Colo. 1981), as shown by competent evidence, *People v. Moore*, 226 P.3d 1076, 1084 (Colo. App. 2009).

## D.    Analysis

¶ 50    When Kolacny was charged, criminal mischief was a class 6 felony if the aggregate damage to the property at issue was between $1,000 and $5,000. § 18-4-501(4)(b)-(d), C.R.S. 2021. Thus, to prove Kolacny committed felony criminal mischief, the prosecution had to prove, among other things, that the damage Kolacny caused to Lowery's car amounted to between $1,000 and $5,000. *See* § 18-4-501(1), (4)(d), C.R.S. 2021; s*ee also People v. Jamison*, 220 P.3d 992, 993 (Colo. App. 2009) (noting the burden is on the prosecution to prove the value of damage to property beyond a reasonable doubt).

¶ 51    Kolacny contends Lowery's testimony that Lowery's estimation of the damage to his car "was similar to what [Lowery] was quoted" constituted hearsay because he asserted the estimation to prove the truth of the amount of the damage and "crossed the line by incorporating a third-party professional estimate."

¶ 52    Even if we assume Lowery's testimony was based on information from a professional estimate and, thus, constituted hearsay, we conclude any error was harmless. *See Hagos*, ¶ 12. Kolacny doesn't challenge the admissibility of Lowery's testimony about Lowery's own estimation of the damage to his car. And because that testimony was based on Lowery's personal knowledge, it was sufficient to support the damages element of the criminal mischief charge. *See* CRE 602 (witnesses may testify to matters of which they have personal knowledge); *People v. Payne*, 2014 COA 81, ¶ 26 ("[A]n owner is [always] competent to testify as to the value of his or her property," so long as the testimony "relate[s] to the property's value at the time of . . . the crime."); *see also People v. Coahran*, 2019 COA 6, ¶¶ 42-43 (victim's testimony estimating amount of damages to car could reasonably support defendant's conviction for felony criminal mischief). While Lowery's testimony was the only evidence of damage to his car in an amount necessary to support a conviction for a class 6 felony, Kolacny's counsel had the opportunity to cross-examine Lowery on his statement but didn't do so.

¶ 53 We acknowledge that one of the responding officers testified that his estimate of the damage to Lowery's car was only about $500. But it was up to the jury to assess the credibility of witness testimony, consider it along with the other evidence presented, and resolve any conflicts in the evidence. *See People v. Poe*, 2012 COA 166, ¶ 14 (the jury, as the fact finder, resolves conflicts, inconsistencies, and disputes in the evidence). Accordingly, we reject Kolacny's assertion that Lowery's testimony substantially influenced the verdict or affected the fairness of the trial proceedings.

## IV. Prosecutorial Misconduct

¶ 54 Kolacny next asserts that the prosecutor committed misconduct during her opening statement and closing argument by misstating the law on the presumption of innocence. We disagree.

### A. Additional Facts

¶ 55 During her opening statement — after discussing the evidence related to the victims' report of the incident and the resulting law enforcement investigation, and before discussing the evidence related to Kolacny's words and actions that night — the prosecutor

24

told the jury, "[A]s we go through this trial, to look at the misdirections and mistruths."

¶ 56    In addition, during closing argument, the prosecutor said:

> I want to talk to you about something the Court has instructed and talked to you about. While a defendant is presumed innocent, he is not presumed credible. Credibility determinations are your province, right? But the defendant's statements to officers on the night of [the incident], they're not presumed credible. You don't have to give him that presumption. You can look at the evidence and his statements, and they don't line up, right?

¶ 57    Kolacny's counsel didn't contemporaneously object to these statements.

B.    Standard of Review, Preservation, and Applicable Law

¶ 58    The primary purpose of an opening statement is to provide the jury with an outline of what counsel expects the evidence will show. *People v. Bustos*, 725 P.2d 1174, 1177 (Colo. App. 1986). "[A] prosecutor may refer to evidence that subsequently will be adduced at trial and draw inferences from that evidence." *People v. Estes*, 2012 COA 41, ¶ 23. Likewise, a prosecutor has latitude during closing argument and may refer to "the strength and significance of the evidence, conflicting evidence, and reasonable inferences that

25

may be drawn from the evidence." *People v. Rhea*, 2014 COA 60,
¶ 46 (quoting *People v. Walters*, 148 P.3d 331, 334 (Colo. App.
2006)).  However, "[c]ounsel may not misstate or misinterpret the
law in closing arguments." *People v. Weinreich*, 98 P.3d 920, 924
(Colo. App. 2004), *aff'd*, 119 P.3d 1073 (Colo. 2005).

¶ 59     We engage in a two-step analysis to review a claim of
prosecutorial misconduct.  *Wend v. People*, 235 P.3d 1089, 1096
(Colo. 2010).  First, we "determine whether the prosecutor's
questionable conduct was improper based on the totality of the
circumstances." *Id.*  We evaluate the alleged misconduct by
examining the context of the argument as a whole and in light of
the evidence before the jury.  *People v. Strock*, 252 P.3d 1148, 1153
(Colo. App. 2010).

¶ 60     Second, if the prosecutor's conduct was improper, we
determine whether the misconduct warrants reversal.  *Wend*, 235
P.3d at 1089; *People v. Robinson*, 2019 CO 102, ¶ 18.  Because
Kolacny didn't object to the prosecutor's statements, we review for
plain error.  *See Wend*, 235 P.3d at 1097.  Only misconduct that is
"flagrantly, glaringly, or tremendously improper" warrants reversal
under the plain error standard.  *Domingo–Gomez v. People*, 125 P.3d

1043, 1053 (Colo. 2005) (quoting *People v. Avila,* 944 P.2d 673, 676 (Colo. App. 1997)).  And "[p]rosecutorial misconduct in closing argument rarely constitutes plain error."  *Strock,* 252 P.3d at 1152-53.

## C.  Analysis

### 1.  Opening Statement

¶ 61    Kolacny asserts that the prosecutor's opening statement, "[r]ather than being a fair comment on the evidence, . . . gutted the presumption of innocence," therefore requiring that all his convictions be overturned.  We disagree.

¶ 62    The prosecutor made the challenged statement in the context of explaining what she believed conflicts in the evidence would show at trial.  The prosecutor made no other references to "misdirections" or "mistruths" in either portion of the bifurcated trial.  This isolated statement, when viewed in context, is hardly the kind of "tremendously improper" statement that would warrant reversal of Kolacny's convictions.

¶ 63    However, besides a conclusory statement that the prosecutor's alleged misconduct applied to all his convictions, Kolacny doesn't present argument as to why his convictions for violation of a

protection order and two counts of possession of a weapon by a previous offender should be reversed. We therefore deem any argument as to these convictions abandoned. *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (A defendant's "failure to specifically reassert on . . . appeal all of the claims which the district court disposed of . . . constitutes a conscious relinquishment of those claims which he does not reassert.").

## 2. Closing Argument

¶ 64 Kolacny first asserts that because he pleaded not guilty, he must be presumed credible. Kolacny doesn't cite any Colorado law to support his assertion, however, and we have found none. To the contrary, the credibility of *any* witness — including that of a defendant — can be questioned. *See* § 13-90-101, C.R.S. 2024 ("Neither parties nor other [interested] persons . . . shall be excluded" from the general rule that "[i]n every case the credibility of the witness may be drawn in question."). And, as noted, during closing argument, the prosecution may make reasonable inferences that may be drawn from the evidence. *Walters*, 148 P.3d at 334. Kolacny didn't testify during the first portion of the trial, but the jury heard evidence about his statements to officers. The

prosecutor, therefore, appropriately pointed out contradictions between those statements and other evidence in the case. *See People v. Walker*, 2022 COA 15, ¶ 41 ("Commenting on the lack of evidence supporting a defense theory does not shift the burden of proof.").

¶ 65 Kolacny next asserts that the prosecutor's argument was legally inaccurate because it was the prosecution's burden to demonstrate each element of the charged offenses beyond a reasonable doubt. But Kolacny fails to explain how the prosecutor's argument that Kolacny was not entitled to a presumption of credibility undermined the prosecution's obligation to prove each element of the charged offenses beyond a reasonable doubt. Moreover, the court instructed the jury on the presumption of innocence — including the prosecution's burden to prove each element of each charged offense beyond a reasonable doubt — and instructed the jury that it was the sole judge of each witness's credibility and the weight to afford to each witness's testimony. We presume the jury understood and followed these instructions. *See People v. Snelling*, 2022 COA 116M, ¶ 22. Additionally, the lack of a contemporaneous objection to this assertion "demonstrate[s] 'the

defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.'" *Walters*, 148 P.3d at 334-35 (quoting *Domingo-Gomez*, 125 P.3d at 1054).

¶ 66   Under the totality of the circumstances, we conclude that there was no prosecutorial misconduct, let alone conduct that was flagrant, glaring, or tremendously improper.

## V.   Surcharges, Costs and Fees

¶ 67   Lastly, Kolacny contends,  and the People agree, that the postconviction court erred by (1) imposing victim assistance surcharges per count instead of per action and (2) by failing to provide him with an opportunity to demonstrate his indigence and request a waiver of surcharges, costs, and fees.

¶ 68   The court imposed a total of $3,283.11 in surcharges, costs, and fees.  *See* § 18-25-101(1)(a), C.R.S. 2024 (restorative justice surcharge); § 24-4.1-119(1)(a), C.R.S. 2024 (victim compensation surcharge); § 24-4.2-104(1)(a)(I), C.R.S. 2024 (victim assistance surcharge); § 24-33.5-415.6(1), C.R.S. 2024 (genetic testing cost).  A court may waive all or a portion of these fees and surcharges if the court determines that Kolacny is unable to pay them.  *See* § 21-1-103(3), C.R.S. 2024 (authorizing public defender application

fee at sentencing); § 18-25-101(4) (authorizing waiver of restorative justice surcharge); § 24-4.1-119(1.5) (authorizing waiver of victim compensation surcharge); § 24-4.2-104(1)(c) (authorizing waiver of victim assistance surcharge); § 24-33.5-415.6(9) (authorizing waiver of genetic testing cost); *see also People v. Fisher*, 539 P.2d 1258, 1260 (Colo. 1975). Similarly, a court may order convicted defendants to pay the costs in their cases unless they are unable to pay them. § 16-18-101(1), C.R.S. 2024. And the surcharge for the victims' assistance fund should only be "levied on each *criminal action* resulting in a conviction." § 24-4.2-104(1)(a)(I) (emphasis added).

¶ 69 Our review of the record indicates that the court entered its surcharge, cost, and fees order outside Kolacny's presence and didn't provide him with an opportunity to address his ability to pay. The court also erroneously imposed a surcharge for the victims' assistance fund based on each count of conviction. Accordingly, we remand this case to the trial court to determine whether Kolacny's obligation to pay surcharges, costs, and fees should be waived because he is unable to pay them. *See Waddell v. People*, 2020 CO 39, ¶ 28 (remanding case to the trial court because it added

31

surcharges outside the defendant's presence without giving him an opportunity to request a waiver).

¶ 70     Because we are affirming the judgment of conviction, if the court determines on remand that Kolacny has the ability to pay some or all of the victims' assistance fund surcharge, the court must only impose that surcharge once, consistent with section 24-4.2-104(1)(a)(I).

## VI.   Disposition

¶ 71     The judgment of conviction is affirmed.  The court's order imposing surcharges, costs, and fees is reversed.  The case is remanded to the trial court to determine whether Kolacny's obligation to pay some or all of the statutory surcharges, costs, and fees should be waived because he is unable to pay them and, if necessary, correct the mittimus accordingly.

JUDGE LIPINSKY and JUDGE JOHNSON concur.